**SYSCO FOOD SERVICES, INC. and Sysco Corporation; Hoechst Celanese Corp. Specialty Chemical Group, F/K/A Virginia Chemicals, Inc., Globe Products Co., Inc., Lamb–Weston, Inc., Allied Corp., Univar Corp., Van Waters & Rogers, Inc., and McKesson Corp., Petitioners,**

v.

**Benjamin TRAPNELL, Individually and as Next Friend of Nicholas Trapnell, a Minor, Polly Ann Haugh, and John Hogan Interests, Inc. D/B/A First Foods Company, Inc., Respondents.**

No. D–3684.

Supreme Court of Texas.

June 22, 1994.

Rehearing Overruled Feb. 16, 1995.

Ruth Greenfield Malinas, J. Michael Myers, David Stephenson, San Antonio, V. Elizabeth Ledbetter, Corpus Christi, William J. Collins, III, Benjamin N. Roeder, Michael C. Falick, Houston, Frank E. Weathered, John A. Smith, III, Corpus Christi, Aldean E. Kainz, Austin, Joy M. Soloway, Stephen C. Dillard, Houston, Roberta J. Hegland, Clay E. Coalson, Corpus Christi, Terriann Trostle, Houston, for petitioners.

Russell Manning, Corpus Christi, Randell A. Kocurek, Houston, for respondents.

GAMMAGE, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and HIGHTOWER, DOGGETT, CORNYN and SPECTOR, Justices, join.

### I.

This case is a products liability death action. The defendants, manufacturers and suppliers of foods containing sulfites, obtained a summary judgment in the trial court. The court of appeals reversed in part and affirmed in part. 850 S.W.2d 529. We affirm.

### II.

Susan Trapnell was a chronic asthmatic. She was allergic to sulfites, a food additive used to process and preserve food. Her reactions to sulfites ranged from "asthma attacks" to, in severe cases, "anaphylactic shock." After one particularly serious episode, Susan was referred to Dr. Ronald Simon, an expert in the diagnosis and treatment of sulfite sensitive persons.[1] After

---

1. In its order of September 14, 1990, discussed below, the federal court noted that researchers have found that as many as 500,000 Americans are sulfite sensitive.

testing Susan, Dr. Simon concluded that she was extremely sensitive to sulfites. Dr. Simon advised Susan to avoid certain foods which commonly contain sulfites. He counseled her that when she ate at restaurants, she should ask whether sulfites were in the foods she wished to eat. In case she accidentally ingested sulfites, Susan always carried a hypodermic syringe of epinephrine.

On August 5, 1984, Susan, her husband, Benjamin, and their son, Nicholas, went to the Officer's Club at the Corpus Christi Naval Air Station to dine at the buffet. Before going through the buffet line, Benjamin asked one of the cooks whether any sulfites had been used in the preparation of the fruit salad. The cook, Robert Mangohig, responded that no sulfites had been used, but offered to get Mr. Trapnell some fresh fruit from the kitchen. Mr. Trapnell declined, and the Trapnells went through the buffet line. Susan allegedly served herself fruit from the fresh fruit bowl, hash browns, apple pie filling, and other foods.

Within minutes after she began eating, Susan had a violent reaction. The Trapnells immediately tried to leave the Club and go to the hospital. Susan made it only to the Club's lobby before collapsing. Benjamin administered epinephrine from the emergency kit. Before E.M.S. arrived, Susan began having seizures. E.M.S. rushed Susan to the Naval Air Station Hospital, where she arrived with no pulse. At the hospital, emergency room personnel succeeded in bringing Susan's blood pressure back. For the next several days, Susan remained unresponsive to stimuli. Susan's brain activity ceased on August 9, and on August 10, the doctors pronounced her dead. No autopsy was performed.

In summary judgment evidence, experts stated that although sulfites can be ingested from many sources, including air pollution, in their opinion Susan died as a result of eating food containing sulfites. Specifically, they identified three foods that Susan had on her plate as potentially containing sulfites: potato whitener on the fruit salad, apple pie filling, and hash browns.

The sulfite manufacturers and other parties in the chain of distribution are as follows:

*Potato Whitener:*

Hoechst Celanese Corporation, Specialty Group (formerly known as Virginia Chemicals, Inc.), manufactured sodium metabisulfite and sold it to John Hogan Interests d/b/a First Foods Company, Inc. First Foods manufactured potato whitener from the sodium metabisulfite it acquired from Hoechst Celanese and sold it to Nordhaus. Nordhaus sold potato whitener to Sysco Food Services, Inc. of Sysco Corporation. Sysco sold potato whitener to the Officer's Club.

*Hash Browns:*

Allied Corporation manufactured and sold sulfites to Univar Corporation. Univar sold the sulfites to Lamb–Weston, Inc. Lamb–Weston processed hash browns and sold them to Sysco. Sysco sold the hash browns to the Officer's Club.

*Apple Pie Filling:*

Allied manufactured sulfites and sold them to McKesson Chemical Company. McKesson then sold sulfites to Zero Pack. Zero Pack added sulfites to apples during processing and sold them to Globe. Globe manufactured apple pie filling and sold it to Labatt Institutional Supply Company. Labatt sold apple pie filling to the Officer's Club.

### III.

On May 22, 1986, the Trapnells brought suit against Sysco and other defendants in state district court, alleging negligence, Deceptive Trade Practices, strict liability, and breach of warranty. On December 22, 1986, the Trapnells filed suit against the United States Department of the Navy under the Federal Tort Claims Act ("F.T.C.A."), 28 U.S.C.A. §§ 1346(b), 2671 *et seq.* (West 1993; West 1965 & Supp.1994). The Trapnells claimed that the Navy was negligent in using sulfites and in failing to warn Susan of the sulfites in the food they prepared.

On March 30, 1989, the federal district court issued a stay order pending the conclusion of the state suit against the manufacturers and distributors. On June 16, 1989, upon the motion of the defendants, the state dis-

trict court ordered an abatement in order for the defendants to try to intervene in federal court, have the federal court stay lifted, and have all the parties litigate all claims in federal court. In a September 26, 1989 order, the federal court denied the motion to intervene on the grounds that it did not have jurisdiction over the proposed intervenors. Relying on *Finley v. United States,* 490 U.S. 545, 555–56, 109 S.Ct. 2003, 2010–11, 104 L.Ed.2d 593 (1989), the federal court held that the Federal Tort Claims Act does not permit the assertion of pendent jurisdiction over additional parties as to which there is no independent basis for federal jurisdiction. It held that there was no independent basis for asserting federal jurisdiction over the proposed intervenors in this case because diversity jurisdiction requires that each defendant be a citizen of a different state from the plaintiffs, and one of the defendants (namely Sysco) did not meet this requirement.[2]

At this point, the proceedings were at a standstill. The state trial court refused several motions to vacate its order of abatement, for reasons that are not clear from the record. The plaintiffs filed a petition for writ of mandamus in the court of appeals in which they complained of the trial court's January 5, 1990 refusal to lift its abatement order. Holding that the abatement order unconstitutionally deprived plaintiffs of a forum under the "open courts" clause of the Texas Constitution,[3] the court of appeals ordered the trial court to lift the abatement order. *Trapnell v. Hunter,* 785 S.W.2d 426, 429

(Tex.App.—Corpus Christi 1990, original proceeding) (*Trapnell* I) (opinion issued February 1, 1990).

On July 31, 1990, soon after the state court complied with the court of appeals' mandate and the case proceeded to trial, the trial court granted summary judgment as to one of the defendants, First Foods. First Foods' motion for summary judgment alleged that its product did not cause Susan Trapnell's death. During the appeal of the order granting First Foods' summary judgment, the federal court lifted its stay and proceeded to try the plaintiffs' F.T.C.A. claim against the Navy.[4] On September 14, 1990, the federal court, based on its finding that no potato whitener had been added to the fruit salad, held that the Navy was not liable and rendered judgment that the plaintiffs take nothing by their claims. On September 17, 1990, the state trial court granted First Foods' motion to sever all claims against it, including the cross-claims asserted by the other defendants, enabling the plaintiffs to immediately appeal the summary judgment. On April 25, 1991, the state court of appeals reversed First Foods' summary judgment because it concluded that the motion and response raised a fact issue regarding causation. *Trapnell v. First Foods Co.,* 809 S.W.2d 606, 611 (Tex.App.—Corpus Christi 1991, writ denied) (*Trapnell* II). The court of appeals refused to consider First Foods' argument that the plaintiffs were collaterally estopped from relitigating the federal court's finding that potato whitener was not added

**2.** The procedural inefficiency of this case is a product of *Finley.* In rejecting the doctrine of pendent party jurisdiction under the Federal Tort Claims Act, the U.S. Supreme Court stated that "the efficiency and convenience of a consolidated action will sometimes have to be foregone in favor of separate actions in state and federal courts." *Finley,* 490 U.S. at 555, 109 S.Ct. at 2010. In 1990, Congress prospectively changed the law to give federal courts "supplemental jurisdiction" over a plaintiff's state law claims against additional parties that form part of the same case or controversy under Article III of the United States Constitution as the federal tort claim. *See* 28 U.S.C.A. § 1367(a) (West 1993) (Pub.L. 101–650 § 310(c)); *see also* David D. Siegel, *Practice Commentary,* 28 U.S.C.A. 829, 831 (West 1993) (stating that the last sentence of § 1367(a) overrules *Finley* ); Cami Rae Baker, *The Codification of Pendent and Ancillary Juris-*

diction: *Supplemental Jurisdiction,* 27 Tulsa L.J. 247, 251 (1991) (arguing that the legislative history of § 1367 indicates that its enactment was motivated by Congress' displeasure with the *Finley* decision). The procedural circumstances present in this case are rare and are unlikely to repeat themselves, given the fact that a federal court now has limited discretion to refuse to assert pendent party jurisdiction under § 1367(a). *See* 28 U.S.C.A. § 1367(c) (West 1993).

**3.** Tex. Const. art. I, § 13.

**4.** The case was tried to the court because a plaintiff who sues under the Federal Tort Claims Act is not entitled to a jury. *See* 28 U.S.C.A. § 2402 (West 1978); *O'Connor v. United States,* 269 F.2d 578, 585 (2d Cir.1959).

to the fruit salad, on the grounds that collateral estoppel was not raised as a basis for summary judgment in the trial court. *See Trapnell,* 809 S.W.2d at 608.

Meanwhile, the trial court granted summary judgments in favor of all other defendants, who had asserted in their motions for summary judgment the grounds that (1) collateral estoppel barred relitigation of the federal court's finding that potato whitener was not in the fruit salad, as to the potato whitener defendants and (2) lack of causation as to the other defendants was proven as a matter of law.[5] The court of appeals reversed in part and affirmed in part. 850 S.W.2d 529, 532 (*Trapnell* III). We affirm the court of appeals.

## IV.

The central issues are: (1) whether the summary judgment evidence on causation raises a fact issue so as to prevent summary judgment in favor of the hash brown and apple pie filling defendants, and (2) whether the federal court's finding that potato whitener was not in the fruit bowl precludes the Trapnells from litigating the issue in state court.[6]

## A. CAUSATION

■ The first question is whether the summary judgment evidence raises a fact issue sufficient to preclude summary judgment in favor of the potato whitener, hash brown, and apple pie filling defendants. In reviewing summary judgment evidence, the issue is whether the evidence establishes as a matter of law that there is no genuine issue of fact as to one or more of the necessary elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). The standards in reviewing summary judgment evidence are:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of fact and that it is entitled to judgment as a matter of law.

(2) In deciding whether there is a material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). The issue here, then, is whether the three sets of defendants carried their burden in showing that there was no genuine issue of fact as to causation. To their response to the potato whitener defendants' motions for summary judgment, the Trapnells attached the affidavits of Dr. Ronald Simon, an expert in sulfite sensitivity who had treated Susan. Dr. Simon's affidavit of July 17, 1990 raises a fact issue about whether whitener was added to the fruit salad and whether it caused Susan Trapnell's death. Dr. Simon stated that Susan probably died from potato whitener on the fruit salad. Dr. Simon based his belief on (1) the rapidity of Susan's reaction, which was consistent with the ingestion of "loose sulfites" such as those contained in potato whitener; (2) his knowledge of the likely quantity of sulfites contained in particular food products in the United States, including potato whitener; and (3) his knowledge of the amount of sulfites needed to cause a fatal reaction in Susan. The Trapnells also attached to their response the affidavit of Dr. Steve Taylor, a biochemist and professor of food science and technology. Agreeing with Dr. Simon, Dr. Taylor stated that "the fruit salad is the only food consumed by Susan Trapnell that could have contained levels of sulfites sufficient to provoke or contribute to her severe response."

■ As to the hash brown and apple pie filling defendants, neither established their right to summary judgment by conclusively

---

**5.** The dates of the various orders granting summary judgment are as follows: (1) for Lamb-Weston: February 8, 1991; (2) for Globe: April 8, 1991; (2) for Allied and Sysco: April 18, 1991; (3) for Hoechst Celanese: April 26, 1991; and (4) for Univar, Van Waters, and McKesson: May 13, 1991.

**6.** We also examine whether the summary judgment evidence raised a fact issue as to causation by potato whitener, since in their motions for summary judgment, the potato whitener defendants asserted both collateral estoppel and the absence of a fact issue on causation as grounds.

negating the element of causation. To their motions for summary judgment, the hash brown defendants attached the same July 17, 1990 affidavit made by Dr. Simon. In the affidavit, Dr. Simon stated that although he did not believe that the hash browns alone contained a sufficient quantity of sulfites to cause Susan's death, they could have contributed to her death in combination with sulfites from another source, in particular the potato whitener. Dr. Simon based this opinion on data concerning the usual levels of sulfites in particular foods, including a study on the sulfite levels in hash browns and other potato products by the California Food and Drug Administration. We believe that such testimony raises a fact issue on the issue of whether the hash browns caused or contributed to Susan's death.

■ The apple pie defendants also attached Dr. Simon's July 17, 1990 affidavit and Dr. Taylor's affidavit to their summary judgment motions. When both the affidavits are considered, they raise a fact issue as to the apple pie filling. A juror could believe Dr. Simon's estimate that the hash browns contained 8 milligrams of sulfite and also believe Dr. Taylor's use of a 12.5 milligram figure for the apple pie filling. Taken together, these figures add up to 20.5 milligrams of sulfite, more than the threshold amount of 20 milligrams that both experts stated would be necessary to provoke such a severe reaction in Susan. The submission of these affidavits by the hash browns and apple pie filling defendants addresses the element of cause-in-fact, but in their summary judgment motions, none of these defendants attempts to negate foreseeability, so we do not reach the issue. Because the hash brown and apple pie filling defendants' own summary judgment evidence raises fact issues on cause-in-fact and does not purport to conclusively negate proximate cause, neither set of

defendants established their right to summary judgment.

## B. COLLATERAL ESTOPPEL

The court of appeals held that the federal judgment does not preclude the Trapnells from relitigating in state court whether potato whitener was in the fruit bowl. 850 S.W.2d at 535. Although we do not agree with the court's reasoning, we agree that collateral estoppel should not be applied in this case because doing so would not promote the goals served by the doctrine.

■ The doctrine of collateral estoppel or issue preclusion is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues. *See Lytle v. Household Mfg. Inc.*, 494 U.S. 545, 553, 110 S.Ct. 1331, 1337, 108 L.Ed.2d 504 (1990); *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). A party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *See Allen*, 449 U.S. at 94–95, 101 S.Ct. at 414–15; *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1166 (5th Cir.1981); *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex.1990); *Tarter v. Metropolitan Sav. & Loan Ass'n*, 744 S.W.2d 926, 927 (Tex.1988); *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984).[7] Strict mutuality of parties is no longer required. *See Allen*, 449 U.S. at 94–95, 101 S.Ct. at 414–15; *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 349–50, 91 S.Ct. 1434,

---

7. Although some of the defendants argue that the federal law of collateral estoppel applies in this case, we need not decide the issue. We perceive little difference between the federal courts' formulation of the doctrine and our own. *Cf. Eagle Properties*, 807 S.W.2d at 721 (declining to determine which law governed collateral estoppel because the result was the same whichever law was applied). The defendants urge that federal law applies in an attempt to avoid the plaintiffs' argument that applying collateral estoppel in this case would violate their right to a jury trial under the Texas Constitution. Because we conclude that collateral estoppel should not be applied, any difference between federal and Texas collateral estoppel law concerning the issue of the right to a jury trial under the Texas Constitution is irrelevant.

1453–54, 28 L.Ed.2d 788 (1971); *Eagle Properties*, 807 S.W.2d at 721. To satisfy the requirements of due process, it is only necessary that the party *against whom* the doctrine is asserted was a party or in privity with a party in the first action. *See Eagle Properties*, 807 S.W.2d at 721; *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex.1971); Michael Kimmel, *The Impacts of Defensive and Offensive Assertion of Collateral Estoppel by a Nonparty*, 35 Geo. Wash.L.Rev. 1010, 1014 (1967).

The court of appeals held that collateral estoppel should not apply because the issue to be estopped was not fully and fairly litigated in the federal trial. However, the court of appeals reached this conclusion only after improperly characterizing the issue to be estopped as "causation," rather than the more narrow issue of whether potato whitener was added to the fruit salad.[8] Since collateral estoppel is an affirmative defense, the potato whitener defendants had the burden of pointing out the issue they wished to be estopped; in their motions for summary judgment and in their briefs before this Court, they have argued only that the limited issue of whether potato whitener was added to the fruit salad has already been litigated. They specifically deny asserting any preclusive effect to any determination of causation by the federal court.

When the issue is properly identified, it becomes clear that this issue was fully and fairly litigated in the federal action. *See* 1B James Wm. Moore, Moore's Federal Practice § 0.441[3.–3] (June 1983) ("[T]he circumstances in which it can be said that the parties to suits in the federal courts lack a 'full and fair opportunity' to present their claims and defenses are probably very limit-

ed."). The issue was necessary to the federal court's judgment that the Navy did not breach its duty to Benjamin Trapnell to adequately respond to his question. The court stated in its September 14, 1990 order that "[b]ecause this court finds that the Officer's Club staff did not use potato whitener in preparing the fruit bowl, Mangohig's response fulfilled that duty." There was no difference in the burdens of proof on this issue in the federal and state actions. *See* Restatement (Second) Of Judgments §§ 28(4), 29 (1982) (stating that even where an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action is not precluded when the party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action); *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 7 (Tex.1986) (citing the Restatement); Geoffrey C. Hazard, Jr., *Res Nova in Res Judicata*, 44 S.Cal.L.Rev. 1036, 1044 (1971) (arguing that relitigation of an issue may be warranted where the burden of proof on that issue differs between the first and second actions). Assuming without deciding that Texas law encompasses the theory of alternative liability or the other theories of collective liability urged by the plaintiffs, the plaintiffs still have the preliminary burden of proving by a preponderance of the evidence that Susan was exposed to the allegedly harmful product, i.e., potato whitener. *See* Restatement (Second) Of Torts § 433B(2) & (3) (1982) (requiring the plaintiff to first prove that the defendants acted tortiously before shifting the burden to the defendants). The federal court, applying Texas

---

8. The court of appeals initially properly characterizes the issue to be estopped, but alters it when it begins its collateral estoppel analysis. 850 S.W.2d at 535. It reads the federal court memorandum order as concluding that potato whitener did not cause Susan's death. 850 S.W.2d at 537. It is true that if potato whitener was not present, it could not have caused Susan's death, but such reasoning should not be used to expand the scope of the federal court's finding for collateral estoppel purposes. The federal court found only that the Officer's Club staff did not use potato whitener in preparing the fruit

bowl, and therefore the Navy did not breach its duty to adequately respond to Benjamin Trapnell's question regarding the presence of potato whitener in the fruit salad. The court did not, and did not need to, reach the larger issue of whether, if potato whitener was present, it caused her death. Because the federal court held that there was no breach of the Navy's duty to respond to Benjamin Trapnell's question, it did not reach the damages element of the negligence claim, which would require that the plaintiffs prove not merely that potato whitener was present but that it caused Susan's death.

tort liability law,[9] placed the same burden on the plaintiffs with respect to this issue.

We also disagree that the lack of joinder of all defendants in the first action adversely affected litigation of the issue of whether potato whitener was added to the fruit salad. Although the court of appeals correctly notes that joinder of the manufacturers and suppliers of the three food products would be advantageous to the plaintiffs on the general issue of causation, the same is not necessarily true regarding this narrower issue. The Trapnells had every incentive to litigate this issue, and indeed may have been aided by the absence of the other defendants in this regard; they did not have to be concerned with proving their case against the potato whitener defendants so strongly as to cast doubt upon their claims against the hash brown and apple pie defendants.[10]

Nevertheless, we agree with the court of appeals' resolution of this case because we do not believe that the purposes of the doctrine of collateral estoppel would be served by applying it to these facts. *Cf. Lytle,* 494 U.S. at 553, 110 S.Ct. at 1337 (holding that "the purposes served by collateral estoppel do not justify applying the doctrine in this case"). Applying collateral estoppel against the Trapnells would not conserve judicial resources, because the parties could still relitigate the issue of whether potato whitener caused Susan Trapnell's death. A fundamen-

tal principle of collateral estoppel is that it can only be asserted against one who was a party to or in privity with a party to the prior litigation. *See Blonder–Tongue,* 402 U.S. at 329, 91 S.Ct. at 1443 ("Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them...."); *Eagle Properties,* 807 S.W.2d at 721 (holding that "it is only necessary that the party against whom the plea of collateral estoppel is being asserted be a party or in privity with a party in the prior litigation"); *Benson,* 468 S.W.2d at 363 ("Due process requires that the rule of collateral estoppel operate only against persons who have had their day in court either as a party to the prior suit or as a privy...."). The non-potato whitener defendants were not parties to the prior federal case, and no one has asserted that they were in privity with the Trapnells or with the Navy. Consequently, if the Trapnells were precluded by collateral estoppel from proceeding against the potato whitener defendants, the non-potato whitener defendants would still be able to argue in their absence that potato whitener was in the fruit salad and that it, not their product, caused Susan's death.[11] The goal of conserving judicial resources by preventing

---

9. Under the Federal Tort Claims Act, the federal court generally applies the tort law of the state in which the incident occurred. *See Ferrero v. United States,* 603 F.2d 510, 512 (5th Cir.1979) ("The components and measure of damages in FTCA claims are taken from the law of the state where the tort occurred...."); *Johnson v. United States,* 576 F.2d 606, 610 (5th Cir.1978) ("In deciding cases under this Act the federal courts generally apply state law, since the Act directs the federal courts to decide liability 'in accordance with the law of the place where the act or omission occurred.'").

10. *See also* Michael Kimmel, *The Impacts of Defensive and Offensive Assertion of Collateral Estoppel by a Nonparty,* 35 Geo.Wash.L.Rev. 1010, 1027 (1967) (arguing that "[w]here the claimant to be estopped was also the claimant in the prior action, his inability to join the additional and future defendant is believed to be generally immaterial to the working of estoppel as to adverse findings because he 'had full opportunity to present the same issues now presented'").

11. Indeed, the record indicates that the non-potato whitener defendants have already begun to litigate the potato whitener issue. Hoechst Celanese points out that some of the non-potato whitener defendants such as Allied argued issue preclusion to the trial court, and that all of the defendants joined in a reply brief filed in the court of appeals that argued for preclusion. However, neither Globe nor Lamb–Weston has argued preclusion to this Court. Lamb–Weston specifically asserts that while it is not concerned with the estoppel issue, if this court upholds the court of appeals' reversal of its summary judgment, all defendants should be present in the subsequent trial so that it can fully explore all causation issues. Moreover, the same non-potato whitener defendants that argued issue preclusion below also presented evidence of potato whitener use and causation in their motions for summary judgment and in their appellate briefs to argue that their products did not cause Susan's death.

relitigation, then, would not be served. *See Lytle*, 494 U.S. at 553, 110 S.Ct. at 1337.[12]

In addition, the goal of protecting defendants from being subjected to multiple lawsuits is simply not applicable to the facts of this case. *See Montana*, 440 U.S. at 153, 99 S.Ct. at 973 (stating that the application of collateral estoppel protects parties "from the expense and vexation attending multiple lawsuits"); Steven C. Malin, *Collateral Estoppel: The Fairness Exception*, 53 J.Air L. & Com. 959, 965 (1988) (same). The potato whitener defendants themselves will not have to defend two suits. *Cf. Lytle*, 494 U.S. at 553, 110 S.Ct. at 1337 (holding that the goal of protecting parties from multiple lawsuits was not implicated).

Application of collateral estoppel also will not necessarily prevent the possibility of inconsistent findings. Since the non-potato whitener defendants are free to raise the potato whitener issue, the jury could exonerate the non-potato whitener defendants on the basis of a finding that the potato whitener was present and caused Susan Trapnell's death. *See Tarter v. Metropolitan Savings & Loan Ass'n*, 744 S.W.2d 926, 928 (Tex. 1988) (holding that the "doctrine of collateral estoppel applies when relitigation could re-

sult in an inconsistent determination of the same ultimate *issue* " (emphasis in original)).

Application of collateral estoppel also involves considerations of fairness not encompassed by the "full and fair opportunity" inquiry. *See Blonder–Tongue*, 402 U.S. at 328, 91 S.Ct. at 1442 (describing the "goal of limiting relitigation of issues where that can be achieved without compromising fairness in particular cases"); *Benson*, 468 S.W.2d at 362–63 ("It has been said that the rule rests upon equitable principles and upon the broad principles of justice.").[13] Given the procedural uniqueness of this case, considerations of fairness are especially important. The Trapnells were prevented from filing all of their claims in one suit by case law that has subsequently been overruled by statute. If collateral estoppel were applied, the Trapnells would face a situation in which they would be foreclosed from litigating the potato whitener issue as to one set of defendants, yet the issue would remain in the case as a defense to the Trapnells' claims against the remaining defendants. Because of a previous suit in a forum dictated by statute, they would be deprived of the opportunity to have all three sets of defendants in one trial.[14]

**12.** In addition, issue preclusion is likely to further complicate the trial in state court. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 29(6) (1982) (listing as a factor weighing against preclusion the fact that "[t]reating the issue as conclusively determined may complicate determination of issues in the subsequent action.")

**13.** *See also* 1B JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 0.441[3.–4] (June 1983) ("The 'broad discretion [to protect against unfairness],' confirmed by *Parklane Hosiery Company v. Shore* speaks, then, to unfairness not embraced by the 'full and fair opportunity.' "); Michael Kimmel, *The Impacts of Defensive and Offensive Assertion of Collateral Estoppel by a Nonparty*, 35 Geo. Wash.L.Rev. 1010, 1024 (1967) (arguing that "fairness may well be, in a particular case, a legitimate reason for denying an estoppel which is otherwise applicable"); Jack Ratliff, *Offensive Collateral Estoppel and the Option Effect*, 67 Tex. L.Rev. 63, 64 (1988) ("The worthwhile goal of repose [afforded by collateral estoppel] must be limited, at least in part, by the more important goal of individual justice.").

**14.** We acknowledge Sysco's concern that refusing to apply collateral estoppel may result in unfairness to it, because if it is found liable to the

Trapnells, it cannot seek contribution from the Navy. The court of appeals' argument that the potato whitener defendants' contribution rights are intact because the Navy cannot assert collateral estoppel against them confuses contribution law with the law of collateral estoppel. 850 S.W.2d at 541 n. 10. Sysco and the others would be prevented from seeking contribution from the Navy because their contribution claims are derivative of the Trapnells' claims against the Navy. Because of the adverse judgment they suffered in federal court, the Trapnells probably have no further cause of action against the Navy. It would follow that none of the defendants has a derivative cause of action against the Navy. *See Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 553 (Tex.1981); *Brown & Root, Inc. v. Rust Eng'g*, 679 S.W.2d 576, 578 (Tex.App.–Texarkana 1984, writ ref'd n.r.e.); *Nacogdoches County v. Fore*, 655 S.W.2d 347, 350 (Tex.App.–Tyler 1983, no writ). Although we recognize this potential unfairness, it is but one consideration in our analysis. *See* Geoffrey C. Hazard, Jr., *Res Nova in Res Judicata*, 44 S.Cal.L.Rev. 1036, 1043 (1971) (recognizing that collateral estoppel involves a "multiple factor analysis and [is] hence not reducible to categorical rules that have yes-no application"). Moreover, the cases suggest that the focus of our analysis should be unfair-

In sum, applying collateral estoppel in this case would fulfill none of the doctrine's purposes: it would neither conserve judicial resources nor prevent multiple lawsuits. In addition, applying collateral estoppel would be unfair to the Trapnells, whose procedural predicament is not of their own making. Our holding today is a narrow one, given the unusual procedural posture of this case and the fact that statutory changes make it unlikely that this situation will recur in the future. For these reasons, collateral estoppel should not be applied here. Consequently, we need not reach and neither approve nor disapprove of the court of appeals' holding that application of collateral estoppel would violate the Trapnells' right to trial by jury under the Texas Constitution. *See* TEX. CONST. art. 1, § 15; art. 5, § 10.

Finally, we must address Allied's complaint that the court of appeals ignored its argument that collateral estoppel bars relitigating the issue of whether the Navy was aware of the risks of sulfites in processed foods. Allied contends that this issue was fully and fairly litigated in the federal trial and that regardless of whether preclusive effect is given to the potato whitener issue, relitigation of this separate issue should be precluded. Allied argues that if the plaintiffs are estopped from relitigating this issue, their claim that the defendants engaged in a conspiracy to promote the use of sulfites and restrict the dissemination of information on its dangers fails.

▪ Whatever the merits of this argument, we cannot hold for Allied because it did not assert collateral estoppel as a ground for summary judgment in its motion in the trial court. Although Allied's memorandum in support of the motion for summary judgment raised this argument, a "motion must stand or fall on the grounds expressly presented in the motion." *McConnell v. Southside Ind. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993). Consequently, we may not up-

hold summary judgment for Allied on this ground.

Because we find that there is a question of fact regarding the hash brown and apple pie filling defendants and the federal judgment does not preclude the Trapnells from litigating the issue of whether potato whitener was in the fruit salad, we affirm the judgment of the court of appeals.

ENOCH, Justice, joined by GONZALEZ and HECHT, Justices, concurring in part and dissenting in part.

I concur in the Court's judgment only to the extent that it remands the Trapnells' claims against the non-potato whitener defendants. I agree that there is a fact issue as to causation that precludes summary judgment in favor of the hash brown and apple pie filling defendants.

I also agree with the Court that the Trapnells had a full and fair opportunity to litigate in the federal lawsuit the issue of the presence of potato whitener in the fruit salad. *See supra,* at 799. I disagree, however, with the Court's conclusion that collateral estoppel does not apply to preclude *any* of the Trapnells' claims. Collateral estoppel cannot apply to the hash brown and apple pie filling defendants because they were not parties in the prior litigation or in privity with any parties in the prior litigation. *See Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 721 (Tex.1990). However, there is no principled reason why collateral estoppel should not apply to preclude the Trapnells' claims against Sysco and Hoechst, the potato whitener defendants. The Court's misapplication of the doctrine of collateral estoppel is motivated by nothing more than the Court's desire to avoid what it perceives is an unfair result. The perceived unfairness, in fact, results from the Trapnells' failure to carry their burden of proof in the federal lawsuit, when, as the Court concedes, the Trapnells had every incentive in the world to fully litigate their claims regarding the potato

ness to the party against whom collateral estoppel is being asserted, in this case the plaintiffs. *See, e.g., Butler v. Stover Bros. Trucking Co.,* 546 F.2d 544, 551 (7th Cir.1977); *Rachal v. Hill,* 435 F.2d 59, 62 (5th Cir.1970); *Provident Tradesmens Bank & Trust Co. v. Lumbermens Mutual Casual-*

*ty Co.,* 411 F.2d 88, 93–94 (3rd Cir.1969); *see also* Michael Kimmel, *The Impacts of Defensive and Offensive Assertion of Collateral Estoppel by a Nonparty,* 35 Geo.Wash.L.Rev. 1010, 1024 (1967) (arguing that the focus of the analysis should be on the party against whom the plea is asserted).

whitener and its presence in the fruit salad. *See supra,* at 799. The Court's pronouncements today abandon any principled application of the doctrine of collateral estoppel and confuse the fundamental precepts of the doctrine. I dissent.

Were Hoechst and Sysco the only defendants in this case, there can be little question that collateral estoppel would apply to preclude the Trapnells from relitigating the presence of potato whitener in the fruit salad. As perfunctorily professed by the Court, collateral estoppel applies to promote judicial efficiency and prevent multiple lawsuits and inconsistent findings. *See supra,* at 801. Judicial economy is served by precluding the Trapnells from relitigating facts that were essential to their judgment against the Navy, namely the presence of potato whitener in the fruit salad, and that are essential to their claims against Hoechst and Sysco in this case. Contrary to the Court's assertion that judicial economy is served only when collateral estoppel protects a party from defending multiple suits, *supra,* at 801, judicial economy is served by saving the courts' time and judicial resources from unnecessary relitigation of identical issues. Michael Kimmel, *The Impacts of Defensive and Offensive Assertion of Collateral Estoppel by a Nonparty,* 35 GEO.WASH.L.REV. 1010, 1013 (1967). When, as in this case, collateral estoppel is asserted by a nonparty as a bar against a party to the prior litigation, judicial economy may be served only by preventing the waste of judicial time and resources on relitigating identical issues. *Id.*

Similarly, were Hoechst and Sysco the only defendants, they would face liability on inconsistent judgments. The federal court found that potato whitener had not been added to the fruit salad. Hoechst and Sysco may be liable only if the jury finds that potato whitener had been added to the fruit salad. Collateral estoppel in its most fundamental application must apply "when relitigation could result in an inconsistent determination of the same ultimate *issue.*" *Tarter v. Metropolitan Savings & Loan Ass'n,* 744 S.W.2d 926, 928 (Tex.1988). While the presence of potato whitener in the fruit salad is not an ultimate issue as to the non-potato

whitener defendants in that their liability is not predicated on whether the potato whitener was added to the fruit salad, the presence of potato whitener is an ultimate issue for Hoechst and Sysco. These defendants, who would but for some unexplained reason otherwise be entitled to rely on collateral estoppel, cannot and face liability on inconsistent determinations of the same ultimate issue.

The Court not only ignores this potential for conflicting findings but also offhandedly dismisses the prejudice to the potato whitener defendants that results if they cannot assert collateral estoppel as a defense. If, contrary to the federal court's finding, the jury concludes that potato whitener had been added to the fruit salad, Sysco and Hoechst cannot seek contribution from the Navy. *See supra,* at 804, n. 14. The Court ignores this unfairness stating only that it must be concerned with unfairness to the Trapnells, the party against whom collateral estoppel is asserted. Considering Hoechst and Sysco, where is the harm to the Trapnells in precluding them from relitigating against those defendants whose liability is predicated on the presence of potato whitener in the salad that which the Trapnells failed to prove in their first lawsuit?

Ignoring all of the precepts and stated goals of collateral estoppel, the Court gives no principled explanation for its departure today from the traditional application of the doctrine of collateral estoppel concerning the Trapnells' claims against Hoechst and Sysco. I would hold that Hoechst and Sysco were entitled to summary judgment on their defense of collateral estoppel. On remand, the remaining parties may litigate the presence or absence of potato whitener in the fruit salad without restriction and the jury may find that Susan Trapnell's death was caused by one or more of the sulfite containing products. It is only if the jury finds that potato whitener was the sole cause of Susan Trapnell's death that the Trapnells will recover nothing. There is nothing inherently unfair in precluding recovery against the potato whitener defendants in this action when the Trapnells failed to carry their burden of proof after a full and fair opportunity to

litigate the potato whitener issue in the prior litigation.

Because I conclude that collateral estoppel precludes the Trapnells' claims against Hoechst and Sysco, I would also reach and decide the Trapnells' argument that application of the doctrine of collateral estoppel in this case violates the right to a jury trial under the Texas Constitution. *See* TEX. CONST. art. I, § 15; art. V, § 10. I would hold that a prior federal court determination may have preclusive effect such that relitigation of the issue before a jury in a state court may be foreclosed and that this estoppel does not violate the right to trial by jury. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 335–37, 99 S.Ct. 645, 653–55, 58 L.Ed.2d 552 (1978).