

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH


### NO. 2-07-243-CV


ESTATE OF BRANCH ARCHER,                          APPELLANTS
BY RICHARD K. ARCHER
AS PERSONAL REPRESENTATIVE,
AND RICHARD K. ARCHER, INDIVIDUALLY
AND AS TRUSTEE OF THE
RICHARD K. ARCHER, M.D., P.A.
PROFIT SHARING PLAN & TRUST


V.


RICHARD O. HARRIS, INDIVIDUALLY                          APPELLEE
AND AS TRUSTEE OF THE
RICHARD O. HARRIS PROFIT SHARING TRUST


------------

### FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

---

[1] *See* Tex. R. App. P. 47.4.

## Introduction

This is a partnership dispute. In six issues, Appellant Richard K. Archer (Archer)[2] complains of a summary judgment in favor of Appellee Richard O. Harris, Individually and as Trustee of the Richard O. Harris Profit Sharing Trust (Harris) on Archer's claims for breach of covenant against encumbrances and for money had and received. We affirm.

## Background

Archer and Harris formed a limited liability partnership with Steve Sterquell in early 1993 to purchase land and a building near the Amarillo airport (the "Property"). Archer, individually, signed a promissory note, secured by a deed of trust executed by all three partners, for $185,000 to purchase the Property.

In late 1993, Harris told Archer that Harris thought he and Archer should no longer do business with Sterquell. Shortly thereafter, Branch (Archer's brother) offered to purchase Harris's interests in the partnership and in the Property. Harris agreed to sell to Branch and, in December 1993, Harris executed instruments transferring his interests in the partnership and in the

---

[2] Archer filed suit in three different capacities—individually, as Trustee of the Richard K. Archer, M.D., P.A. Profit Sharing Plan & Trust, and as personal representative of the Estate of Branch Archer. Branch Archer, who passed away before this suit was filed, was Richard Archer's brother and shall be referred to in this opinion as "Branch."

Property to Randall Kubiak as trustee for Branch. Branch tendered a check to Harris that, at Archer's urging, Harris endorsed, placing the funds in a bank. Sterquell did not consent to this sale.

In late June 1994, the Amarillo Economic Development Corporation (AEDC) approached Archer about AEDC's interest in purchasing the Property. Archer did not tell Harris or Sterquell about AEDC's interest.

On July 1, 1994, Archer, Harris, and Sterquell met to discuss resolving their differences. After a full day of negotiations, the parties entered into a Mutual Compromise Settlement and Partition Agreement (the Mutual Release).[3] The Mutual Release effectively transferred Harris's and Sterquell's interests in the Property and the partnership to Archer. The Mutual Release also contained a broad, reciprocal release of all claims by any of the partners against one another, whether known or unknown.

Four days later, on July 5, 1994, Archer agreed to sell the Property to AEDC for $515,000, and the sale closed a few days later on July 13. When Harris and Sterquell learned about the sale, they each demanded one-third of the profits from the sale. Archer refused, and Harris and Sterquell sued Archer in Randall County, alleging among other things that Archer breached his

---

[3] The parties also entered into another settlement agreement that is not at issue in this appeal.

3

fiduciary duty. That suit culminated in a judgment on a jury verdict awarding Sterquell damages and a judgment notwithstanding the verdict that Harris take nothing.

On appeal, the Amarillo Court of Appeals affirmed the judgment as to Sterquell after Sterquell accepted a remittitur and reversed and rendered judgment for Harris awarding him the same damages as Sterquell.[4] Archer had argued, among other things, that the broad release language in the Mutual Release barred Harris's and Sterquell's claims as a matter of law, but the court of appeals disagreed, concluding that the Mutual Release did not bar Harris's and Sterquell's claim that Archer breached his fiduciary duty when he failed to disclose the AEDC offer to purchase the Property.[5]

While the Randall County case was pending, Archer, in various capacities,[6] sued Harris in Wichita County (Harris's place of residence).[7] Archer's claims were predicated on Harris's purported sale of his interests to Branch. At Harris's request, the trial court abated this suit pending the outcome of the Randall County action.

---

[4] *Archer v. Harris*, 134 S.W.3d 411 (Tex. App.—Amarillo 2004, pet. denied).

[5] *Id.* at 430–34.

[6] *See supra* n.2.

[7] Sterquell has never been a party to the Wichita County action.

4

After the Randall County action became final, Harris moved for summary judgment on Archer's two pending claims for breach of the covenant against encumbrances and for money had and received. One of the grounds Harris asserted was that Archer's claims were barred by the Mutual Release. In response, Archer asserted, among other things, that Harris was precluded from relying on the Mutual Release because of Archer's affirmative defenses of collateral estoppel and judicial estoppel. Without specifying the grounds, the trial court granted summary judgment for Harris, and this appeal followed.

### Standard of Review

Citing the Mutual Release, Harris's motion for summary judgment asserted the affirmative defense of release.[8] A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.[9] To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.[10] When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant,

---

[8] *See* Tex. R. Civ. P. 94.

[9] *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *see* Tex. R. Civ. P. 166a(b), (c).

[10] *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex. 1996).

5

and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[11]

Archer concedes that if the Mutual Release is valid, it would bar all his claims.[12] To avoid this result, Archer asserts that Harris cannot use the Mutual Release as a defense in this action because of the doctrines of collateral estoppel and judicial estoppel. Like release, collateral estoppel and judicial estoppel are affirmative defenses.[13] Accordingly, we must review Archer's summary judgment evidence to determine whether it raised a fact issue as to each element of at least one of the defenses he asserted.[14]

### Analysis

Collateral estoppel applies when three elements are present: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action;

---

[11] *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

[12] After quoting the release on page 2 of his brief, Archer states, "*If this **mutual** release is valid*, it would indeed bar [Archer's] claims."

[13] *See Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 553 (Tex. 2002); *Equitable Recovery, L.P. v. Heath Ins. Brokers of Tex., L.P.*, 235 S.W.3d 376, 383–84 (Tex. App.—Dallas 2007, pet. dism'd).

[14] *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) ("If the party opposing a summary judgment relies on an affirmative defense, he must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment.").

6

and (3) the parties were in an adversarial posture in the first action.[15] The

doctrine is designed to promote judicial efficiency and to prevent inconsistent

judgments by preventing re-litigation of an ultimate issue of fact.[16] When the

party against whom collateral estoppel is asserted had a full and fair opportunity

to litigate the issue in the prior suit, that party may not re-litigate the issue.[17]

Judicial estoppel bars a party who has made a sworn statement in a

pleading, a deposition, oral testimony, or affidavit in a judicial proceeding from

maintaining a contrary position in a subsequent proceeding.[18] The elements of

judicial estoppel are (1) a sworn, inconsistent statement made in a previous

judicial proceeding; (2) the party who made the statement successfully

maintained the previous position; (3) the previous statement was not made

---

[15] *See Tex. Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001); *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 521 (Tex. 1998).

[16] *See Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994).

[17] *See Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990).

[18] *See Dallas Sales Co. v. Carlisle Silver Co.*, 134 S.W.3d 928, 930 (Tex. App.—Waco 2004, pet. denied); *Andrews v. Diamond, Rash, Leslie & Smith*, 959 S.W.2d 646, 649 (Tex. App.—El Paso 1997, writ denied).

inadvertently or by mistake, fraud, or duress; and (4) the statement was deliberate, clear, and unequivocal.[19]

Archer argues that Harris is precluded from relying on the Mutual Release to defeat his claims because Harris prevailed in the Randall County suit in part because Harris asserted that the Mutual Release was invalid and because the validity of the Mutual Release was fully and fairly litigated in the prior action, culminating in a determination that the release was invalid. Harris responds that he did not challenge the validity of the Mutual Release in the Randall County suit and that nothing in that suit estops Harris from relying on the Mutual Release in defense against Archer's claims in this action. We agree with Harris.

Harris claimed in the Randall County suit that Archer owed him a fiduciary duty as his partner to reveal AEDC's offer to purchase the Property before the parties entered into the Mutual Release.[20] Because Archer failed to do so, Harris asserted claims for fraud and breach of fiduciary duty in the procurement

---

[19] *See In re Estate of Loveless*, 64 S.W.3d 564, 579–80 (Tex. App.—Texarkana 2001, no pet.) (citing *Am. Sav. & Loan Ass'n v. Musick*, 531 S.W.2d 581, 589 (Tex. 1975)); *see also Dallas Sales*, 134 S.W.3d at 930.

[20] *Archer*, 134 S.W.3d at 424.

of the Mutual Release.[21] If Harris prevailed on his contention that Archer

fraudulently induced him to enter into the Mutual Release, he had a choice:

> [I]t is well settled that one who is induced by fraud to enter into a
> contract has his choice of remedies. "He may stand to the bargain
> and recover damages for the fraud, or he may rescind the contract,
> and return the thing bought, and receive back what he paid."[22]

Upon the jury's finding that Archer defrauded Harris, then, Harris could either

rescind the Mutual Release or "stand to the bargain" by affirming the Mutual

Release and recovering damages for Archer's fraud in procuring it.[23]  Harris

chose the latter.

Archer did not, and could not, produce summary judgment evidence that

the issue of the Mutual Release's validity was adjudicated in the Randall County

suit and that it was held invalid, nor could Archer raise a fact issue that Harris

deliberately, clearly, and unequivocally asserted that the Mutual Release was

invalid.  To the contrary, the court of appeals's opinion in the Randall County

suit establishes that Harris and Sterquell did *not* disclaim the Mutual Release or

seek to have it set aside in that action but affirmed the Mutual Release's

---

[21] *Id.*

[22] *Dallas Farm Mach. Co. v. Reaves*, 158 Tex. 1, 10, 307 S.W.2d 233, 238–39 (1957).

[23] *See id.*; *see also Foley v. Parlier*, 68 S.W.3d 870, 882 (Tex. App.—Fort Worth 2002, no pet.) ("[I]n a fraud case, the plaintiff can either claim rescission for fraud and get his property back or he can sue for damages and affirm the transaction.").

validity by seeking to recover damages based on it.[24] The court of appeals variously noted, for example, that "Harris did not seek rescission of the [Mutual Release]";[25] "Harris [did not] release[] his claims for breach of fiduciary duty [against Archer] by execution of the [Mutual Release]";[26] and "Sterquell [and Harris] did not disclaim or seek to set aside the [Mutual Release]; [they] claimed damages because of the [Mutual Release's] existence."[27]

Thus, Harris's "deliberate, clear, and unequivocal" position regarding the Mutual Release in the Randall County suit was that Archer fraudulently induced him to sign the Mutual Release, not that the release was invalid. Accordingly, because the court of appeals's opinion establishes that Harris did not try to have the Mutual Release declared invalid, and certainly cannot be said to have "deliberately, clearly, and unequivocally" made a sworn statement that the release was not valid, judicial estoppel does not apply.[28]

Similarly, Harris is not collaterally estopped from obtaining summary judgment in this action based on the Mutual Release. There is nothing

---

[24] 134 S.W.3d at 434.

[25] *Id.* at 439.

[26] *Id.* at 446.

[27] *Id.* at 434.

[28] *See Dallas Sales*, 134 S.W.3d at 930; *Loveless*, 64 S.W.3d at 579–80; *Andrews*, 959 S.W.2d at 649.

inconsistent between the judgment in the Randall County suit—that Harris and Sterquell shall recover damages from Archer for his fraudulent inducement in procuring the Mutual Release—and the trial court's summary judgment in this action that the Mutual Release bars Archer's claims. Harris and Sterquell did not elect to rescind the Mutual Release in the Randall County suit. They chose to "stand by" the Mutual Release by recovering damages for having been fraudulently induced by Archer to enter into it.[29] Because the release was not found to be invalid in the earlier suit, collateral estoppel does not preclude Harris from arguing that the release bars Archer's claims in this action.[30]

## Conclusion

We, therefore, conclude that Harris was entitled to summary judgment in this action based on the Mutual Release.[31] We affirm the trial court's judgment.

PER CURIAM

PANEL: CAYCE, C.J.; HOLMAN and WALKER, JJ.

DELIVERED: December 4, 2008

---

[29] *See Reaves*, 158 Tex. at 10, 307 S.W.2d at 238–39.

[30] *See Petta*, 44 S.W.3d at 579; *Sysco Food Servs.*, 890 S.W.2d at 801.

[31] Because of our disposition of this issue, we need not address Archer's remaining issues. *See* Tex. R. App. P. 47.1.

11