# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-14-00428-CV

---

**Lakecroft, Ltd. and Western Hemisphere Investments Corp., Appellants**

**v.**

**Randal H. Adams, Susan Adams, Hope Alcorta, Alfred Anderson, Janice Anderson, Brian Ash, Elizabeth Ash, Bent Bean, Stacey Bean, James Brady, Richard Byrd, Krin Byrd, Donald Carberry, Marcia Carberry, Bertrand Chartier, Joyce Claytor, Edwin Coinson, Denice Moran Coinson, Rocky Collette, Jennifer Collette, Sam Collette, Carol Ann Collette, Mike Crelin, Daniele Crelin, Henry W. De la Rosa, John Dettmer, Sally Dettmer, Melissa Duvall, Rachael V. East, Stephen Edlund, Christopher Ewing, Jack Fehrenbach, Ronald Fey, Grace Fey, Andrew T. Fiedler, Rhoda Fiedler, Donald Charles Fleming, Fresh Start Builders, David Glasscock, Gerald Gueldner, John Gueldner, Geraldine Gueldner, William Hagerman, Dianne Hagerman, Harve John Hagerty, Jacqueline Harris, Gary Holcomb, Lori Holcomb, Bill D. Hood, Dorothy Hood, John Hughes, Janice Hughes, Carmen Kane, Leonard Tumolo, Timothy Keith, Deborah Keith, Randy Kerner, Cynthia Kerner, David Lewis, Lan Lewis, Lori K. Lindsay, Lisa F. Landford, Esther Lucio, William T. Maurer, Julie McCollum as Trustee of the Frederick G. McCollum and Julie A. McCollum Revocable Living Trust, Katherine McDaniel, Gary Mercer, Vivian Mae Merrit, Dalton Mewis-Heddleston, Tami Mewis, Richard Miller, Jeanne Butler, Sharon Mooney, Terri Mooney, E.D. Morrison, Richard Morrison, Helen Elizabeth Morrison, Kenneth W. Pape, Darlene Parsons, Larry Pratt, Robert Ragland, Bernard Charles Reck and Anna Maria Reck, co-Trustees of the Bernard C. Reck and Anna M. Reck Revocable Living Trust, Rittiman Ranches LLC, Paul Rohler, Jennifer Rohler, Megan Rutledge, Earl Schacherl, Janice Schacherl, Josef Scherm, Lilia Scherm, Dorothy Schroeder, Marcus Schulte, Cheryl Schulte, Michael R. Stewart, Karen Stewart, Barbara Stuart, Rick Sutton, Gabriela Sutton, Raul Tijerina, Nancy Talbott, Rob Q. Talbott, Jeff Turpin, Glenn Wash, Keith Weidner, Sunda Weidner, Ian Whitehead, David Willson, Phil Zaccaria, Terri Zaccaria, Edward Zeigle, and Susan Zeigle, Appellees**

---

**FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT NO. C2013-1144C, HONORABLE GARY L. STEEL, JUDGE PRESIDING**

<u>**M E M O R A N D U M   O P I N I O N**</u>

This is an appeal from a final summary judgment in a real-property dispute.  We will affirm the district court's judgment.

The appellants in this case—Lakecroft, Ltd., and its general partner, Western Hemisphere Investments Corp.—are the successors to the original developer of half-century-old residential subdivisions located along the shores of Canyon Lake and known as Canyon Lake Shores, Units 1, 2, and 3.  The appellees, over one hundred in number, own residential lots in Canyon Lake Shores.  The roots of the underlying dispute lie in the manner in which these lots were conveyed to their original owners by the developer—in lieu of providing a metes-and-bounds description of the subject property, each deed merely cross-referenced the recorded plat for the subdivision in which the lot is located.  The pivotal issue in the dispute concerns the import of dotted lines that appear on the plats.

Each of the plats depicts what can be classified as three categories of property of relevance to this appeal:  (1) land lying above the 948-foot elevation contour line, on which appear streets (principally "Lakeshore Drive") bordered by numbered residential lots that are demarked with solid lines; (2) land lying below a monumented line roughly tracking the 918-foot elevation ("the 918-foot contour line"), identified as "Canyon Lake," and that the parties agree had previously been deeded by the developer to the U.S. Army Corps of Engineers; and (3) an area between the 948-foot and 918-foot contours that is burdened by a flood-flowage easement that the developer had

previously granted to the Corps of Engineers.[1]  It is in the flowage-easement area that the aforesaid dotted lines are found.  The dotted lines appear as extensions of the solid lines that signify the "side" boundaries of lots as depicted above the 948-foot contour (with the lots' "fronts" bordering a street and the "backs" facing the lake), continuing from that contour through the easement area before concluding at the 918-foot contour.  In appellees' view, their respective chains of title from the developer conveyed to each of them fee simple title to a lot or lots that includes both (1) the property above the 948-foot contour that is depicted on the plat with solid lines; and (2) subject to the flowage easement, the adjacent property delineated with dotted lines between the 948-foot and the 918-foot contour.[2]  Appellants contend otherwise, insisting that their predecessor conveyed only lots indicated by solid lines on the plat, above the 948-foot contour, and retained ownership of all property burdened by the flowage easement.

While the parties' appellate briefing engages in some peripheral skirmishing regarding the subjective understandings of the parties to the original conveyances, the more critical

---

[1]  A notation on each plat indicates that within the flowage easement, "permanent buildings for human habitation" are prohibited and "other structures can be constructed only with the prior approval" of the Corps of Engineers and the developer.

[2]  Approximately ten of the appellees claim common ownership, subject to the flowage easement, of a tract located between the 918-foot contour, in addition to the lots they own individually above the 948-foot contour.  These appellees' lots, situated in Canyon Lake Shores Unit 2, lie along a portion of the lake shoreline that resembles a ">," such that the "backs" of the lots face other lots rather than the 918-foot contour.  For these lots, the Unit 2 plat depicts dotted lines extending only from the outer "side" boundaries of the lots located at each end of the ">" (which are designated as Lot 160 and Lot 190), but traversing the easement area down to the 918-foot contour in a manner similar to the other appellees' properties.  Within the area bounded by the dotted lines is the following note: "This area between contour line 918 and contour line 948 to be used as a private community beach for owners of lots from No. 160 through Lot No. 190 inclusive."  Appellees argue, and we agree, that these appellees' claims of common ownership of the "private community beach" area turn upon the same material issues as the other appellees' claims of ownership of property in the flowage easement area, at least in the posture of this appeal.

feature of this dispute is that similar questions about the significance and effect of the plats' dotted lines have arisen previously over the years. The summary-judgment evidence reflects, and the parties acknowledge, that in 1984 and again in 1997, a predecessor of appellants, through its president, saw fit to file of record a sworn instrument to address uncertainty regarding "the use of said dotted lines in the area between the 948 and 918 contour lines" on the plats and, in particular, "whether a conveyance of one of said waterfront lots by Lot number as designated on said Subdivision Plat conveys to the grantee that portion of said lot situated between the 948 and 918 contour lines and designated by dotted lines." In each recorded instrument, the company gave assurance that the original deeds had been intended to convey not only property above the 948-foot contour, but also the adjacent areas within the flowage easement bounded by the dotted lines and 918-foot contour, adding that the significance of the dotted lines was merely to emphasize that these areas of the lots being conveyed were burdened by the easement.[3]

Of more immediate significance is a 2006 final judgment that addressed the "dotted lines" question as it impacted ownership of a lot in Canyon Lake Shores Unit 2. A purchaser of

---

[3] Appellants insist that we should simply ignore this history, urging that these filings are immaterial to the issues on appeal. On the contrary, appellants' prior conduct is relevant to the fairness of applying collateral estoppel "offensively," as appellees point out. *See infra*. at 6.

The 1997 instrument, signed by Arthur Kronenberg, then the president of a predecessor entity known as A.K. Lakecroft, Inc., bears a typed title, "QUITCLAIM." According to appellants, the title was "forged" sometime after Mr. Kronenberg signed the document, and they further insist that the instrument would not have effected a conveyance in any event. Appellants likewise dispute the significance of the 1984 instrument, signed by Thomas Burwell, who was then president of a predecessor entity known as Lakecroft, Inc., emphasizing that Burwell's assurances concerned a different subdivision that had been platted and developed in a manner similar to Canyon Lake Shores. However, appellants have not disputed that Burwell and Kronenberg gave the assurances that they did and that these were filed of record.

4

the lot, Diana Candace Carson, sued a predecessor of appellants and an intervening owner for declarations quieting her title to the portions of her lot between the 948 and 918 contour lines and designated on the plat with dotted lines. Appellants' predecessor answered with a general denial. Following a bench trial, the district court rendered judgment for Carson, declaring that "the property includes not only the portion of the tract . . . between Lakeshore Drive and contour line 948, but also the property between contour line 948 and contour line 918."[4] The court additionally declared that:

> as to the original recorded plat, dotted lines were used as lot lines between the 948 and 918 contour lines in the preparation and filing of said subdivision plat solely for the purpose of emphasizing that the property lying between said contour lines is subject to the flood flowage easement indicated.

The present proceeding arose in June 2013, when appellants filed a "Correction Affidavit" signed by Arthur Kronenberg—the same individual whose sworn assurances on behalf of appellants' predecessor had been filed of record in 1999—now disclaiming his prior statements and asserting that the deeds to Canyon Lake Shores lots had not conveyed property beyond the 948-foot contour after all.[5] Appellees responded by bringing suit against appellants to quiet appellees'

---

[4] In this regard, the court also observed that the "918 contour line" was "actually a monumented line," in contrast to the "948 contour line," which "is actually defined by elevation and marks the United States of America flowage easement." The import of this reference was to emphasize a distinction consistent with intent to convey a single lot extending to the monumented line at the 918-foot contour that would be burdened by the easement to the extent it lay below the 948-foot contour.

[5] Kronenberg claimed that he had originally relied on "misinformation that was provided to me by others."

titles between the 948-foot and 918-foot contours and for declaratory relief to that end.[6] Appellees also sought a declaration explicitly invalidating Kronenberg's "Correction Affidavit."[7] Appellants responded with trespass-to-try-title counterclaims. Subsequently, appellees moved for summary judgment on both of their affirmative claims and appellants' counterclaims, relying principally on the grounds of res judicata and collateral estoppel arising from the 2006 final judgment in the *Carson* litigation. The district court granted the motion and rendered a final judgment that appellants take nothing on their trespass-to-try-title counterclaims, declaring that appellants own the disputed property between the 948-foot and 918-foot contours, and ordering that its judgment be filed in the Comal County real property records.[8] This appeal ensued.

In a single issue, appellants urge that the district court erred because appellees "failed to demonstrate that they were entitled to summary judgment as a matter of law." Their material complaints are essentially that appellees were not entitled to summary judgment based on either res judicata or collateral estoppel.[9] Collateral estoppel, or issue preclusion, bars the

---

[6] *See* Uniform Declaratory Judgments Act (UDJA), Tex. Civ. Prac. & Rem. Code § 37.004(a).

[7] Incident to their declaratory claims, appellees also sought attorney's fees as the UDJA permits. *Id*. § 37.009. Appellants complained below that this was an improper use of the UDJA as a mere vehicle to obtain fees otherwise unrecoverable through their quiet-title claims, which are rooted in equity. The district court ultimately did not award appellees any attorney's fees, however, and appellants do not bring forward any complaint regarding appellees' use of the UDJA as a procedural mechanism.

[8] While granting the summary-judgment motion, the district court did not explicitly award appellees their requested declaration invalidating the Kronenberg "Correction Affidavit." However, the other relief awarded would appear to have the same substantive effect.

[9] Appellants also attempt to challenge the "standing" of the appellees who own lots in the ">" area on the basis of "no dotted lines." They further insist that a handful of other appellees do

relitigation of identical issues of fact or law decided in a prior suit.[10] The doctrine promotes judicial efficiency and finality of judgments.[11] To invoke collateral estoppel, a party must establish that: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties against whom the doctrine is asserted were parties or were in privity with a party in the first action.[12] Whether a party may invoke collateral estoppel "offensively," as appellees have done with regard to their two sets of affirmative claims, is initially left to the sound discretion of the trial court, to be exercised in light of the "fairness factors" identified in *Parklane Hosiery*.[13]

We have reviewed the summary-judgment record and conclude that the district court properly granted summary-judgment on the ground of collateral estoppel and did not abuse its discretion in applying that doctrine "offensively." This explanation of the basic reasons for our decision will suffice given the nature of the underlying dispute and the concerns raised in appellees' motion to expedite.[14] We overrule appellants' issue and affirm the district court's judgment.

---

not currently own lots or otherwise have any justiciable interest in the suit. These contentions are without merit.

[10] *See, e.g.*, *Texas Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001).

[11] *See, e.g.*, *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994).

[12] *See id.*

[13] *Scurlock Oil v. Smithwick*, 724 S.W.2d 1, 7 (Tex. 1986) (citing *Parklane Hosiery v. Shore*, 439 U.S. 322, 331 (1979)).

[14] *See* Tex. R. App. P. 47.4. Similarly, we need not address the alternative ground of res judicata. *Id*. R. 47.1.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   December 18, 2014