Affirmed and Memorandum Opinion filed May 14, 2009








Affirmed and Memorandum Opinion filed May 14, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-01059-CV

____________

 

RELIANCE CAPITAL, INC., Appellant

 

V.

 

G.R. HMAIDAN, INC., G.R. HMAIDAN,
AND ISAM HMAIDAN, Appellees

 



 

On Appeal from the 113th
District Court

Harris County, Texas

Trial Court Cause No. 2000-29229A

 



 

M E M O R A N D U M   O P I N I O N








Reliance Capital, Inc. appeals from a grant of summary
judgment favoring appellees, G.R Hmaidan, Inc., G.R. Hmaidan, and Isam Hmaidan
(collectively Athe Hmaidans@).  Reliance sued
the Hmaidans for breach of contract based on an alleged failure to pay on
promissory notes.  The trial court granted summary judgment for the Hmaidans on
res judicata grounds.  In its first three issues on appeal, Reliance contends
that the trial court erred in granting judgment on res judicata principles
because:  (1) Reliance was not a party or in privity with a party to the prior
action; (2) the judgment in the prior action resulted from an impermissible
Mary Carter agreement; and (3) the Uniform Fraudulent Transfer Act (AUFTA@) was improperly
applied in the prior action.  In its fourth issue, Reliance contends that the
trial court erred in refusing to grant Reliance=s motion for
summary judgment.  We affirm.

I.  Background

The present action was severed from another action (Athe main action@), which began
when Greatland Investments sued several entities, including Bert Wheeler
Liquors, Inc. (ABWLI@), for overdue
lease payments on commercial rental property.[1] 
Greatland subsequently added La Villita del Norte, Inc. as well as the Hmaidans[2]
as defendants.  The Hmaidans had purchased the business that had formerly
occupied the rental space in question from BWLI and were still paying on notes
for this purchase.  The Hmaidans were making their payments on the notes to La
Villita, La Villita having been assigned the notes by BWLI.  In its claims
against La Villita, Greatland claimed that the assignment of the right to
receive payment on the notes from BWLI to La Villita was a fraudulent
conveyance.  Greatland sued the Hmaidans to force them to make future payments
on the notes to Greatland rather than BWLI or La Villita.  During the pendency
of the main action, La Villita assigned the notes to Reliance Capital,
purportedly to extinguish, at least in part, a prior debt.  Afterwards, the
Hmaidans apparently made payments to Reliance for a time and then stopped.








After failing to attend depositions in the main action,
BWLI and La Villita had their pleadings stricken as discovery sanctions.  Greatland
was subsequently awarded an interlocutory summary judgment against BWLI and an
interlocutory default judgment against La Villita.  Greatland and the Hmaidans
then filed pleadings bringing Reliance into the lawsuit.  As mentioned above,
La Villita had assigned the notes to Reliance.  Reliance, however, was not
served with the lawsuit until(1) the claims against it were severed from the
main action, and (2) final judgment was entered in the main action.  The
remaining parties, principally Greatland and the Hmaidans, reached a
settlement, later incorporated into the final judgment, under which the
Hmaidans would make future payments on the notes to Greatland.[3] 
In the final judgment in the main action, the trial court (1) held BWLI and La
Villita liable for past due rental payments to Reliance,  (2) found that the
assignment of the notes from BWLI to La Villita was fraudulent, and (3) ordered
the Hmaidans to make further payments on the notes to Greatland.  The final
judgment also severed the claims involving Reliance.[4]








In the present, or severed, action, Reliance is suing the
Hmaidans for payments on the notes while the Hmaidans are suing, essentially,
to be released from their obligation to pay anyone on the notes except as
instructed in the final judgment in the main action.  Both sides filed motions
for summary judgment.  In their motion, which was granted, the Hmaidans argued
that all issues pertaining to rights to payments under the notes were resolved
in the main lawsuit; thus, Reliance is barred by the doctrine of res judicata
(claim preclusion or issue preclusion) from attempting to re-litigate those
matters in the severed action.  In its motion, which was denied, Reliance
contended that it was entitled to payments under the notes and had proven so as
a matter of law.

As stated above, in its first three issues, Reliance
contends that the Hmaidans= motion was improvidently granted
because:  (1) Reliance was not a party or in privity with a party to the main
action; (2) the judgment in the main action resulted from an impermissible Mary
Carter agreement; and (3) the Uniform Fraudulent Transfer Act (AUFTA@) was improperly
applied in the main action.  In its fourth issue, Reliance contends that the
trial court erred in denying its motion for summary judgment.

We analyze the grant of a traditional motion for summary
judgment under well‑established standards of review.  See generally
Tex.R. Civ. P. 166a; Nixon v. Mr. Prop.  Mgmt. Co., Inc., 690 S.W.2d
546, 548‑49 (Tex. 1985).  The movant bears the burden to show that there
is no genuine issue of material fact and that it is entitled to judgment as a matter
of law.  Tex.R. Civ. P. 166a(c).  We review the motion and the evidence de
novo, taking as true all evidence favorable to the nonmovant, and indulging
every reasonable inference and resolving any doubts in the nonmovant=s favor.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Where, as here,
both sides filed motions seeking summary judgment on the same issue, and the
trial court granted one while denying the other, we review both sides= summary judgment
evidence, determine all questions presented, and, if the trial court erred,
render the judgment the trial court should have rendered.  Id.

II.  Res Judicata








In its first issue, Reliance contends that the trial court
improperly granted the Hmaidans= motion on res judicata grounds.  ARes judicata@ is often said to
encompass two separate but related doctrines: claim preclusion and issue
preclusion.  Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex.
1992).  Claim preclusion, or traditional res judicata, precludes relitigation
of claims that have been finally adjudicated, or that arise out of the same
subject matter and could have been litigated in the prior action.  Amstadt
v. U.S. Brass, 919 S.W.2d 644, 652 (Tex. 1996).  It requires proof of:  (1)
a prior final judgment on the merits by a court of competent jurisdiction, (2)
an identity of parties or those in privity with them, and (3) a second action
based on the same claims as were raised or could have been raised in the first
action.  Id.  Issue preclusion, or collateral estoppel, precludes
relitigation of particular issues already resolved in a prior action, and it
requires that (1) the facts sought to be litigated in the second action were
fully and fairly litigated in the first, (2) those facts were essential to the
judgment in the first action, and (3) the party against whom the doctrine is
asserted was a party, or in privity to a party, in the first action.  Sysco
Food Servs., Inc. v. Trapnell, 890 S.W.2d 796, 801‑02 (Tex. 1994).

Neither party takes a firm stance on whether issue
preclusion or claim preclusion is more properly applied here.  We believe that
the facts of this case place it more neatly in the realm of issue preclusion: 
the issue in question being ownership of the notes.  Clearly, the issue of
ownership of the notes was essential to the judgment in the main action, the
trial court having found that BWLI owned the notes because the attempted
conveyance to La Villita was fraudulent.  Accordingly, the question of whether
issue preclusion applies depends on (1) whether Reliance can be held to have
been in privity with La Villita or BWLI; and (2) whether the facts were fully
and fairly litigated in the first action.

A.  Privity








No prevailing definition of privity exists that
automatically applies to all cases involving res judicata or collateral
estoppel.  Ayre v. J.D. Bucky Allshouse, P.C., 942 S.W.2d 24, 27 (Tex.
App.CHouston [14th
Dist.] 1996, writ denied).  Instead, the determination of whether two entities
are in privity requires a detailed examination of their specific
circumstances.  Id.  Generally, privity connotes those who are so
connected with a party to the judgment as to have such an identity of interests
that the party to the judgment represented the same legal right.  Amstadt,
919 S.W.2d at 653.  However, privity is not established by the mere fact that
entities may happen to be interested in the same question or in proving the
same facts.  Ayre, 942 S.W.2d at 27.  Courts have identified three
common but non-exclusive ways in which an entity can be in privity with a party
to an action:  (1) the entity can control an action even if it is not a party
to the action; (2) its interests can be represented by a party to the action;
or (3) it can be a successor-in-interest, deriving its claims through a party
to the prior action.  Amstadt, 919 S.W.2d at 653.

In their motion for summary judgment, the Hmaidans argued,
among other things, that Reliance, BWLI, and La Villita were in privity because
they were operated as a single business enterprise.  See generally Paramount
Petroleum Corp. v. Taylor Rental Ctr., 712 S.W.2d 534, 536 (Tex. App.CHouston [14th
Dist.] writ ref=d n.r.e.) (discussing the single business
enterprise doctrine).  Indeed, uncontested summary judgment evidence
demonstrated with specificity the interconnectedness of the three entities.  To
begin with, a Rule 11 agreement between the parties in the present action
established a high degree of commonality of shareholders, directors, and
officers between Reliance, La Villita, and BWLI.  Specifically, Ronald J.
Herrmann is listed as the sole director of both Reliance and La Villita, and he
is listed as co-director of BWLI along with his wife.  Ronald Herrmann is also
listed as the sole shareholder in La Villita, and formerly the sole shareholder
in Reliance.  The current shareholder of Reliance, as well as the other shareholders
in BWLI, are also related in one way or another to Ronald Herrmann, including
his wife and various family trusts.  The president of La Villita is listed as
Ronald Herrmann; for BWLI, his wife is listed; for Reliance, his daughter is
listed.








Additionally, Reliance=s designated
corporate representative in this case, Louis Wenzel, testified in his
deposition regarding the interconnectedness of management and operations,
particularly in regard to matters relating to this case such as the Hmaidans= purchase of the
business and creation of the associated notes.  For another example, in regards
to the purported unsecured loan from Reliance to BWLI, for which later
conveyance of the notes was supposed payment, Wenzel acknowledged that ARonald J. Herrmann
was signing checks on behalf of [Reliance] and giving them to [BWLI], and he as
president of [BWLI] was signing the notes evidencing those loans.@  Furthermore, the
record reflects that BWLI, La Villita, and Reliance all shared a primary
business address and that the same attorney, Todd A. Prins, who represented
both BWLI and La Villita in the main action, represents Reliance in the present
action.[5]

Based on this uncontested evidence establishing the
interconnectedness of BWLI, La Villita, and Reliance, particularly in regard to
matters pertaining to the main action and the present action, we find that the
trial court did not err in holding that Reliance was in privity with BWLI and
La Villita.  Cf. Amstadt, 919 S.W.2d at 653 (explaining that a party is
in privity with a party to a judgment when they are so connected as to have an
identity of interests); Gaughan v. Spires Council of Co-Owners, 870
S.W.2d 552, 555 (Tex. App.CHouston [1st Dist.] 1993, no writ.)
(rejecting application of res judicata because there was no evidence that
associated-party in second lawsuit was sham or alter ego of corporate defendant
in first lawsuit); CLS Assocs., Ltd. v. AC BC, 762 S.W.2d 221,
224 (Tex. App.CDallas 1988, no writ.) (rejecting argument that party
asserting res judicata had to be the alter ego of the party in the first
action, suggesting that a lesser standard applies).

B.  Fully & Fairly Litigated








Reliance argues that the issue of ownership was not fully
and fairly litigated in the main action because the trial court struck the
pleadings of BWLI and La Villita as a discovery sanction before then entering,
respectively, a summary judgment and default judgment against them.  Reliance
cites authority for the proposition that dismissal of an action as a discovery
sanction does not constitute a determination on the merits.  See TransAm.
Nat. Gas Corp. v. Powell, 811 S.W.2d 913, 918 (Tex. 1991) (holding that a
dismissal or default judgment for discovery abuse adjudicates claims without
regards to the merits).  Here, however, the trial court did not dismiss BWLI or
La Villita=s claims or enter a default judgment against them as a
discovery sanction.  Rather, the court struck BWLI and La Villita=s pleadings as a
discovery sanction.  The summary judgment and default judgment clearly reached
the merits.[6] 
Indeed, the final judgment, which incorporates the earlier interlocutory
judgments, is quite detailed regarding the merits, finding specifically, among
other things, that the assignment of the notes from BWLI to La Villita was a
fraudulent conveyance.  Moreover, Reliance concedes that a default judgment can
constitute a determination on the merits for res judicata purposes.  See
Jones v. First Bank of Anson, 846 S.W.2d 107, 110 (Tex. App.CEastland 1992, no
writ) (holding that default judgment can be used to assert res judicata); Mendez
v. Haynes Brinkley & Co., 705 S.W.2d 242, 245‑46 (Tex. App.CSan Antonio 1986,
writ ref=d n.r.e.)
(applying collateral estoppel after default judgment).

Because the trial court clearly considered and ruled on the
merits of the controlling issueCownership of the notesCand the striking
of BWLI and La Villita=s pleadings was occasioned by their own
conduct, we find that the issue was fully and fairly litigated.  Because we
find that (1) the issue of ownership of the notes was essential to the judgment
in the main action, (2) Reliance was in privity with parties to the main
action, and (3) the facts were fully and fairly litigated in the main action,
we further find that the trial court did not err in granting the Hmaidans= motion for
summary judgment on res judicata, specifically collateral estoppel, grounds. 
Accordingly, we overrule Reliance=s first issue.

III.  Mary Carter








In its second issue, Reliance contends that the trial court
improperly granted the Hmaidans= motion because the judgment in the main
action was the product of an impermissible AMary Carter@ settlement
agreement between the Hmaidans and Greatland.  A so-called Mary Carter
agreement occurs when one of several defendants settles with the plaintiffCguaranteeing a
minimum recovery for the plaintiffCwhile agreeing to
continue through trial as a party; depending on the jury=s allocation of
liability, the settling defendant=s share of
liability may be reduced.  Elbaor v. Smith, 845 S.W.2d 240, 247 (Tex.
1992).  The Texas Supreme Court has held such settlements to be against public
policy because they distort the character of a lawsuit in which they are
entered (e.g., through the joining of forces of titularly adverse
parties), and encourage ultimate resolution through a final trial rather than
through settlement.  Id.








In its reply brief, Reliance refines its argument to say
that while the settlement agreement between Greatland and the Hmaidans may not
have been a true Mary Carter agreement, it was A>Mary Carter= like@ because, through
it, Greatland and the Hmaidans (plaintiff and defendant) agreed to cooperate
against Reliance (another defendant).  However, the circumstances in the
present lawsuit, or pair of lawsuits, are clearly distinguishable from the AMary Carter@ scenario. 
Although the settlement in question contained provisions in which Greatland and
Hmaidan agreed to cooperate in the lawsuit against Reliance,[7]
it is still not in the nature of a Mary Carter agreement, principally because
of the nature of Greatland=s claims against the Hmaidans.  While the
Hmaidans were defendants in the main action, they were not defendants in the
same way that the Reliance-associated entities (BWLI and La Villita) were
defendants.  BWLI and La Villita were sued for breach of a lease agreement and
fraudulent conveyance of assets.  The Hmaidans were pulled into the lawsuit
essentially as a means of collecting the amounts owed by BWLI and La Villita. 
Reliance provides no argument as to how the the Hmaidans own liability could be
reduced by their cooperation with Greatland.  The Hmaidans had no apparent
liability or potential liability outside of what they already owed on the
notes.  The Hmaidans appear to simply want to know whom to pay on the notes,
and Greatland wants to get paid.  Cooperation under such circumstances does not
violate any public policy identified by Reliance.[8] 
It further does not create a concern that Reliance=s or related
entities=s liability might
be artificially increased; in other words, the settlement does not distort the
litigation process.  See Elbaor, 845 S.W.2d at 247.  Accordingly, we
overrule Reliance=s second issue.

IV.  UFTA

In its third issue, Reliance contends that the trial court
erred in granting the Hmaidans= motion for summary judgment because the
Uniform Fraudulent Transfer Act (AUFTA@) was improperly
applied in the main action.  Tex. Bus. & Com. Code Ann. '' 24.001-.013.  As mentioned above, the trial court
utilized UFTA as the basis for holding in the main action that the transfer of
the notes from BWLI to La Villita was fraudulent.  Specifically, Reliance
asserts that the trial court should not have applied UFTA in the main action
because:  (1) the Hmaidans were not creditors entitled to protection under the
act; (2) the transfer from BWLI to Reliance was for reasonably equivalent
value; and (3) the transfer constituted a good faith purchase of the notes.








In response, the Hmaidans argue that Reliance is
attempting, improperly, to collaterally attack the judgment in the main
action.  AA collateral attack is an attempt to avoid the binding
force of a judgment in a proceeding not instituted for the purpose of
correcting, modifying, or vacating the judgment, but in order to obtain some
specific relief which the judgment currently stands as a bar against.@  See Browning
v. Prostok, 165 S.W.3d 336, 346 (Tex. 2005).  Only a void judgment, i.e.,
one where the court rendering judgment Ahad no
jurisdiction of the parties or property, no jurisdiction of the subject matter,
no jurisdiction to enter the particular judgment, or no capacity to act,@ may be
collaterally attacked.  Id.  Clearly, under this issue, Reliance is not
(1) arguing against the application of res judicata; (2) arguing that the trial
court in the main action had no jurisdiction or no capacity; or (3) seeking
mere correction, modification, or vacation of the prior judgment.  Instead,
Reliance is now seeking affirmative relief (payment on the notes) that is
barred by application of the judgment in the main action, in which the court
ordered such payments made to Greatland.  This is an impermissible collateral
attack.  See id.  Consequently, we overrule Reliance=s third issue.

VI.  Reliance=s Motion

In its fourth issue, Reliance contends that the trial court
erred in denying its motion for summary judgment.  In its motion, Reliance
asserted that it was entitled to payment under the notes as a matter of law. 
As explained above, in the main action, the trial court resolved all issues
pertaining to rights under the notes and ordered the Hmaidans to make payments
under the notes to Greatland.  Obviously, Reliance would not be entitled to
such payments if res judicata applies to defeat its claim of entitlement to the
payments.  Because we have held above that the trial court properly granted the
Hmaidans= motion on res
judicata grounds (holding that payment must be made to Greatland), we summarily
overrule Reliance=s fourth issue.

We affirm the trial court=s judgment.

 

/s/      Adele Hedges

Chief Justice

 

 

Panel consists of
Chief Justice Hedges and Justices Anderson and Seymore.









[1]  In the main action, Greatland also named Bert
Wheeler=s Inc. and BWI Merger Co. as defendants.  Greatland
asserts that it leased the property in question to these entities who then
subleased it to BWLI, who then defaulted.





[2]  Initially only G.R. Hmaidan, Inc. and Isam Hmaidan
participated in the lawsuits until Reliance subsequently brought G.R. Hmaidan
into the lawsuit as a party in his personal capacity.





[3]  Specifically, under the terms of the settlement
agreement, other defendants, Bert Wheeler=s
Inc. and BWI Merger Co., who had leased the property in question and then
subleased it to BWLI, agreed to pay Greatland $92,500.  The Hmaidans were then
to make their payments on the notes 60% to Greatland and 40% to Bert Wheeler=s Inc. and BWI Merger Co.  Furthermore, under the
agreement, Greatland agreed to essentially finance the Hmaidans= lawsuit with Reliance.





[4]  The following timetable may help clarify the
sequence of events:

 

$ July 2000:  Greatland files original suit

 

$ September 1, 2000:  La Villita purportedly assigns
notes to Reliance

 

$ August 7, 2001:  Pleadings of La Villita and BWLI
stricken

 

$ August 7, 2001:  Summary judgment against BWLI

 

$ September 4, 2001:  Default judgment against La
Villita

 

$ November 2-7, 2001:  Greatland settles with Hmaidans

 

$ November 8, 2001:  Pleadings add Reliance to main
case

 

$ November 14, 2001:  Final judgment including
severance order

 

$ November 29, 2001:  Reliance served

 





[5]  It is also worth noting that La Villita attempted to
assign the notes to Reliance shortly after Greatland filed its lawsuit. 
Reliance has suggested no reason for the timing of this assignment other than
to shield this asset from Greatland.





[6]  BWLI and La Villita=s essentially dropping out of the main action after the purported
conveyance of the notes to Reliance appears to have been a strategic move on
their part.  However, the move left them open to a default judgment on the
merits.  It is also worth noting again, as mentioned above, that counsel for
both parties at the time was the same counsel now representing Reliance.





[7]  See n. 3 supra.





[8]  Reliance cites State Farm Fire & Casualty Co.
v. Gandy, 925 S.W.2d 696 (Tex. 1996), in arguing that public policy
concerns may provide a basis for invalidating settlement agreements even
outside the Apure@ Mary Carter
context.  In Gandy, the Texas Supreme Court examined several cases,
including Elbaor, in which it had invalidated an assignment of a cause
of action or a settlement when such assignment or settlement gave a defendant a
direct financial stake in the plaintiff=s
cause of action against a third party.  Gandy, 925 S.W.2d at 707-12. 
Each of these situations is distinguishable from the present case, wherein the
Hmaidans did not receive any financial stake in a recovery by Greatland against
Reliance or Reliance-related entities.  Instead, in the severed action, the
Hmaidans are primarily defending against Reliance=s demand for payment on notes.  The Hmaidans are contractually
obligated to pay someone on the notes.  The settlement agreement does not alter
the amount of their liability, regardless of the outcome of the severed
action.  Thus, this situation is unlike those identified in Gandy,
wherein a defendant obtained a direct financial stake in a plaintiff=s cause of action.  Id.  Consequently, the
public policies identified in Gandy do not apply here.

Reliance further cites Phillips v.
Allums, 882 S.W.2d 71, 75 (Tex. App.CHouston
[14th Dist.] 1994, writ denied), for the proposition that it is fundamentally
unfair to permit two parties to resolve an issue by settlement and then use the
resulting judgment (via collateral estoppel) against a party in a severed
action that did not have an opportunity to litigate the issue in the main
action.  However, as discussed above, the issue of who had a right to the note
payments was fully and fairly litigated in the main action, and Reliance was in
privity with parties to that action.  Thus, the reasoning in Phillips is
not applicable to the present case.