ACCEPTED
01-14-00687-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/2/2015 9:15:33 PM
CHRISTOPHER PRINE
CLERK

No. 01-14-00687-CV

In The
First Court of Appeals
Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
1/2/2015 9:15:33 PM
CHRISTOPHER A. PRINE
Clerk

## THE BETTER BUSINESS BUREAU OF METROPOLITAN HOUSTON, INC., THE BETTER BUSINESS BUREAU OF METROPOLITAN HOUSTON EDUCATION FOUNDATION, DAN PARSONS, CHRIS CHURCH, CHURCH ENTERPRISES, INC., GARY MILLESON, RONALD N. MCMILLAN, D'ARTAGNAN BEBEL, MARK GOLDIE, CHARLIE HOLLIS, AND STEVEN LUFBURROW,

**Appellants**

**v.**

## JOHN MOORE SERVICES, INC. AND JOHN MOORE RENOVATION, LLC,

**Appellees**

**On appeal from the 269th District Court of Harris County, Texas, cause no. 2013-76215**

## REPLY BRIEF OF APPELLANTS

Lauren B. Harris
Texas Bar No. 02009470
lharris@porterhedges.com
Susan K. Hellinger
Jeffrey R. Elkin
M. Harris Stamey
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6624
Facsimile: (713) 226-6224

***Attorneys for Appellants***

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page No.**

Table of Contents .......................................................................................... ii

Table of Authorities ......................................................................................iv

Introduction ...................................................................................................1

Objections to Appellees' Brief.......................................................................2

Argument........................................................................................................4

    I.       The Denial of the Motion to Dismiss by Operation of Law Was
           Erroneous........................................................................................4

         A.     The TCPA applies to this lawsuit despite John Moore's
               efforts to relitigate decided issues...............................................4

               1.     First Attempted Relitigation: Inapplicable Statutory
                       Exemption.........................................................................5

               2.     Second Attempted Relitigation: The Waived and
                       Invalid Unconstitutionality Argument..............................6

               3.     Third Attempted Relitigation: The Non-Existent
                       Government Participation Requirement ...........................8

         B.     Res judicata and collateral estoppel require the dismissal of
                John Moore's claims .................................................................9

         C.     John Moore has not met its burden to establish by clear and
               specific evidence a prima facie cause for the essential
                elements of its claims...............................................................14

               1.     Claims Abandoned or Waived.......................................14

                2.     Breach of Contract..........................................................14

                 3.     DTPA................................................................................15

                4.     Conspiracy ......................................................................16

5.    Antitrust ............................................................16

         a.    Elements Common to All Antitrust Claims .........17

                  (i)    Market Power and Relevant Market ..........17

                  (ii)   Harm to Competition .................................19

         b.    Restraint of Trade...............................................20

                  (i)    Tying ........................................................21

                  (ii)   Boycott .....................................................23

         c.    Attempt to Monopolize .......................................27

                  (i)    Predatory or Anticompetitive Conduct......27

                  (ii)   Dangerous Probability of Success .............28

II.    The Trial Court Erred in Overruling the Houston BBB's
       Objections to John Moore's Evidence, but Did Not Err in
       Sustaining Objections.........................................................30

Conclusion and Prayer .............................................................32

Certificate of Service ...............................................................34

Certificate of Compliance ........................................................35

iii

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
486 U.S. 492 (1988)......................................................................................20

*American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.,*
456 U.S. 556 (1982)......................................................................................25

*Anderson Prod. Inc. v. Koch Oil Co.,*
929 S.W.2d 416 (Tex. 1996) .......................................................................30

*Aquatherm Indus., Inc. v. Fla. Power & Light Co.,*
145 F.3d 1258 (11th Cir. 1998) ...................................................................23

*Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.,*
441 S.W.3d 345 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)...*passim*

*Black v. Jackson,*
82 S.W.3d 44 (Tex. App.—Tyler 2002, no pet.)............................................7

*Choate v. San Antonio & A.P. Ry. Co.,*
44 S.W. 69 (Tex. 1898) ..................................................................................7

*Combined Law Enforcement Ass'n of Tex. v. Sheffield,*
No. 03-13-00105-CV, 2014 WL 411672 (Tex. App.—Austin
Jan. 31, 2014, no pet. h.)................................................................................6

*Consolidated Metal Prods., Inc. v. Am. Petroleum Instit.,*
846 F.2d 284 (5th Cir. 1988) .....................................................21, 23, 24, 25

*DeSantis v. Wackenhut Corp.,*
793 S.W.2d 670 (Tex. 1990) .......................................................................23

*Direct Commercial Funding, Inc. v. Beacon Hill Estates, LLC,*
407 S.W.3d 398 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ..............30

*Federal Deposit Ins. Corp. v. Lenk,*
361 S.W.3d 602 (Tex. 2012) .......................................................................17

*Golan v. Pingel Enter., Inc.,*
 310 F.3d 1360 (Fed. Cir. 2002) ........................................................................19

*Hammond v. Ashe,*
 131 S.W. 539 (Tex. 1910) ..................................................................................7

*Hand v. Dean Witter Reynolds, Inc.,*
 889 S.W.2d 483 (Tex. App.—Houston [14th Dist.] 1994, writ denied) .......16

*Jardin v. Marklund,*
 431 S.W.3d 765 (Tex. App.—Houston [14th Dist.] 2014, no pet. h.) ...........9

*Kinney v. BCG Attorney Search, Inc.,*
 No. 03-12-00579-CV, 2014 WL 1432012 (Tex. App.—Austin
 Apr. 11, 2014, pet filed) (mem. op.) ................................................................9

*Lee v. Pennington,*
 830 So. 2d 1037 (La. Ct. App. 2002) ...............................................................8

*McCraw v. Maris,*
 828 S.W.2d 756 (Tex. 1992) ...........................................................................31

*Menasha Corp. v. News Am. Mkting. In-Store, Inc.,*
 354 F.3d 661 (7th Cir. 2004) ....................................................................17, 18

*Olympia Co. v. Celotex Corp.,*
 597 F. Supp. 285 (E.D. La. 1984), *aff'd*, 771 F.2d 888 (5th Cir. 1985) ........29

*Owens v. Ridgeway,*
 395 S.W.2d 704 (Tex. App.—Amarillo 1965, writ ref'd n.r.e.) .....................7

*Primrose Drilling Ventures Ltd. v. Nealwell Drilling Ltd.,*
 No. 14-98-00618-CV, 2000 WL 890622 (Tex. App.—
 Houston [14th Dist.] July 6, 2000, no pet.) ...................................................17

*Rebel Oil Co. v. Atlantic Richfield Co.,*
 51 F.3d 1421 (9th Cir. 1995) ....................................................................18, 27

*RTLC AG Prods., Inc. v. Treatment Equip. Co.,*
 195 S.W.3d 824 (Tex. App.—Dallas 2006, no pet.) .............................*passim*

*Schimmel v. McGregor,*
 438 S.W.3d 847 (Tex. App.—Houston [1st Dist.] 2014, no pet. h.) ..............8

*Scurlock Oil Co. v. Smithwick,*
    724 S.W.2d 1 (Tex. 1986) ............................................................................13

*Spectrum Sports, Inc. v. McQuillan,*
    506 U.S. 447 (1993)..............................................................................17, 18

*Sysco Food Servs., Inc. v. Trapnell,*
    890 S.W.2d 796 (Tex. 1994) .......................................................................12

*Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,*
    219 S.W.3d 563 (Tex. App.—Austin 2007, pet. denied) ............................28

*Times Herald Printing Co. v. A.H. Belo Corp.,*
    820 S.W.2d 206 (Tex. App.—Houston [14th Dist.] 1991, no writ)..............20

*Van Dyke v. Boswell, O'Toole, Davis & Pickering,*
    697 S.W.2d 381 (Tex. 1985) .......................................................................12

*Water Craft Mgmt. L.L.C. v. Mercury Marine,*
    361 F. Supp. 2d 518 (M.D. La. 2004), *aff'd*, 457 F.3d 484 (5th Cir. 2006) .19

RULES AND STATUTES

TEX. BUS. & COM. CODE ANN. §17.45(1) ......................................................... 15-16

TEX. BUS. & COM. CODE ANN. §17.45(4) .............................................................15

TEX. CIV. PRAC. & REM. CODE ANN. § 27.001.....................................................*passim*

TEX. CIV. PRAC. & REM. CODE ANN. § 27.003.....................................................12

TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c) .................................................14

TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d) ..................................................9

TEX. CIV. PRAC. & REM. CODE ANN. §27.010(b).....................................................5

TEX. CIV. PRAC. & REM. CODE. ANN. §51.014(a)(12) ........................................ 10-11

TEX. CIV. PRAC. & REM. CODE ANN. §51.014(b).....................................................11

TEX. R. APP. P. 38.1(g), (i).................................................................................2

TEX. R. APP. P. 44.1(a).....................................................................................31

Tᴇx. R. Eᴠɪᴅ. 103(a) .......................................................................................31

**ARTICLES**

Kimberly L. King, *An Antitrust Primer for Trade Ass'n Counsel*, 75 Fla.
B. J. 26, 26 (2001)..........................................................................................20

**MISCELLANEOUS**

Section of Antitrust Law, Model Jury Instructions to Civil Antitrust Cases at
B-57-59 (2005 ed.)..........................................................................................24

Sᴇɴᴀᴛᴇ Cᴏᴍᴍ. ᴏɴ Sᴛᴀᴛᴇ Aғғᴀɪʀs, Bɪʟʟ Aɴᴀʟʏsɪs, Tᴇx. H.B. 2973,
82ɴᴅ Lᴇɢ., RS (2011)........................................................................................9

Wᴇʙsᴛᴇʀ's Tʜɪʀᴅ Nᴇᴡ Iɴᴛᴇʀɴᴀᴛ'ʟ Dɪᴄᴛɪᴏɴᴀʀʏ, Unabridged, accessed
Dec. 15, 2014, http://unabridged.merriam-webster.com ............................................3

## INTRODUCTION

John Moore's Response Brief illustrates that this is an empty and duplicative lawsuit employed as another weapon in John Moore's campaign of harassment against the Houston BBB. John Moore does not contest that the Houston BBB met its burden to establish that the TCPA applies to this lawsuit. But, it tries to escape dismissal by challenging issues that have been previously decided against it or waived by it, revealing that this lawsuit is John Moore's attempt at a "do-over" of the First Legal Action. Indeed, it does not dispute that the Houston BBB established the elements of res judicata and collateral estoppel. It only seeks to avoid those doctrines by citing inapposite cases and wrongly blaming others for its filing this serial lawsuit.

Even if this suit were not precluded, because the TCPA applies, the burden shifted to John Moore to establish each essential element of its claims by clear and specific evidence. It wholly failed to meet that burden in the trial court and its Response Brief fares no better. Its Brief is a series of complaints, conclusions, and twisted reasoning. It cites scant applicable authority and declares many facts by fiat. Unable to establish a prima facie case for the theories it advanced in the trial court, John Moore raises a number of different theories on appeal. In addition to being improper, John Moore fails to establish those theories either. The denial of

the Houston BBB's motion to dismiss by operation of law is erroneous. The motion should be granted as the trial court subsequently ordered.

## OBJECTIONS TO APPELLEES' BRIEF

Many of the statements John Moore presents as facts in its Response Brief emanate largely from the assumptions of John Moore's president, Valentine, or the creativity of John Moore's counsel. In some instances, John Moore's purported facts are outright misrepresentations—direct or by insinuation—of the record. None of these statements can serve as the requisite clear and specific prima facie evidence of John Moore's claims necessary to avoid dismissal.

In contravention of the Rules, John Moore makes numerous assertions without any citation to the record. *See* TEX. R. APP. P. 38.1(g), (i); *see, e.g.,* Response Br. pp.1-2 ("But Valentine's successes threatened other people ..."). Many of John Moore's other assertions are supported by rejected evidence. For instance, the bulk of John Moore's citations to the record are to the affidavit of Valentine and many of the Houston BBB's objections to Valentine's affidavit were sustained. 2Supp.CR3-4, 8. *See, e.g.,* Response Br. p.19 (citing CR1211 although objections were sustained to all the text on the page); 23 (citing CR1208 although objections were sustained to ¶70 which contains the cited quotes); *see* CR541, 544-47, 2Supp.CR4.

Moreover, even if not the subject of a sustained objection, many other assertions in Valentine's affidavit are conclusory statements and facially not within Valentine's knowledge and, thus, are not competent evidence to support the so-called "facts." *See Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ("Conclusory statements are not probative and accordingly will not suffice to establish a prima facie case."). For example, John Moore asserts that "the Houston BBB has the power to create or destroy significant consumer trust in a business," but cites only Valentine's affidavit, which simply states that conclusion. Response Br. p.13; CR1214¶92.[1]

Finally, some of John Moore's statements misrepresent the record. For example, in an effort to bolster its feeble antitrust claims, John Moore repeatedly calls the Houston BBB a "trade association." *See, e.g.,* Response Br. pp.7-8. A "trade association," however, is "an association of tradesmen, businessmen, or manufacturers in a ***particular*** trade or industry for the protection and advancement of their common interests." WEBSTER'S THIRD NEW INTERNAT'L DICTIONARY, Unabridged, accessed Dec. 15, 2014, http://unabridged.merriam-webster.com

---

[1] Volume II of the Clerk's Record was filed under seal. Because counsel did not have access to that volume, they attempted to recreate it. Consequently, citations to that volume (CR1123-2309) may be off by a page or two despite the Houston BBB's best efforts at accuracy.

(emphasis added).  In contrast, the Houston BBB is a non-profit organization with members from myriad industries and a mission of promoting ethical business practices.[2]  *See generally* CR122¶3.

## ARGUMENT

### I.    The Denial of the Motion to Dismiss by Operation of Law Was Erroneous.

As the trial court correctly recognized in the order it signed after the motion to dismiss was overruled by operation of law, the Houston BBB's motion to dismiss should be granted.

#### A.    The TCPA applies to this lawsuit despite John Moore's efforts to relitigate decided issues.

The Houston BBB met its burden to establish that this lawsuit is based on, relates to, or is in response to the Houston BBB's exercise of its right of free speech and that the TCPA applies.  John Moore offers no argument on this point. Instead, as part of its effort to relitigate the First Legal Action, John Moore tries to avoid the effect of the TCPA by raising issues that it failed to preserve or that have

---

[2]    Additionally, John Moore insinuates that the Houston BBB dismissed its Federal Lawsuit to avoid a pending motion to dismiss.  Response Br. p.4 (citing CR1211).  Even if Valentine's affidavit supported these facts (*see* CR1211) and the Houston BBB's objections to the cited testimony had not been sustained (CR545, 2Supp.CR4), John Moore's statement is misleading.  The Federal Lawsuit was dismissed because Valentine signed a declaration swearing that John Moore ceased using the Houston BBB's name and logo, thereby agreeing to the very relief sought by the Houston BBB.  CR125¶21.

been decided against it. Waived and settled points cannot thwart the application of the TCPA here.

## 1. First Attempted Relitigation: Inapplicable Statutory Exemption

John Moore first raises an issue that was decided against it in the First Legal Action—application of the TCPA exemption in §27.010(b). That exemption provides that the TCPA does not apply to actions "brought against a person primarily engaged in the business of selling … goods or services, if the statement or conduct arises out of the sale … of goods, services, or … a commercial transaction in which the intended audience is an actual or potential buyer or customer." TEX. CIV. PRAC. & REM. CODE ANN. §27.010(b). This Court has concluded that "the exemption does not apply" to these facts. *John Moore Servs.*, 441 S.W.3d at 354 (determining that the intended audience of the Houston BBB's ratings and statements about John Moore is the consuming public).

John Moore's attempts to evade the Court's conclusion are unavailing because it still fails to offer evidence that (1) the Houston BBB is "*primarily engaged in the business of selling … goods and services*," and (2) the speech complained of arises out of the sale of those goods or services or a commercial transaction in which the intended audience is actual or potential buyers or customers. *See* TEX. CIV. PRAC. & REM. CODE ANN. §27.010(b) (emphasis added). John Moore's discussion of the Houston BBB's revenues does not establish that its

5

*primary* activity is the business of selling goods and services. Its extended narrative about the Houston BBB's purported business plan is irrelevant conjecture. To the extent John Moore provides sources, it chiefly cites an inadmissible document of unknown origin[3] which actually undermines its arguments by showing the Houston BBB does not sell ratings and other services to consumers. *See* CR2122 (BBBs provide consumers data, "educational information and expert advice … free of charge").

### 2.  Second Attempted Relitigation: The Waived and Invalid Unconstitutionality Argument

Although it waived the issue of the TCPA's constitutionality in the First Legal Action, John Moore seeks to reargue it here. *See John Moore Servs.* 441 S.W.3d at 352 n.1 ("… that argument was waived due to failure to present it to the trial court."). Not only did John Moore waive the point, but the Austin Court of Appeals considered the constitutionality argument John Moore advances here— and rejected it. *See Combined Law Enforcement Ass'n of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672, at *10 (Tex. App.—Austin Jan. 31, 2014, no pet. h.) ("find[ing] no provision in the TCPA that purports to impose a higher standard of proof than would be required at trial," "much less one that violates the open-

---

[3]  The cited document, CR2116-30, is hearsay and was not authenticated as it was not prepared by any defendant. CR569. The Houston BBB's objections to the document should have been sustained. *See* Appellants' Br. pp.52-53; *infra* pp.30-31.

courts provision"). Also, John Moore incorrectly claims that drawing reasonable inferences from the evidence is prohibited. This Court has not taken that position. In the First Legal Action, this Court stated "'prima facie' evidence is 'the minimum quantum of evidence necessary to support a *rational inference* that the allegation of fact is true.'" *John Moore Servs.*, 441 S.W.3d at 354-55 (citation omitted) (emphasis added). Regardless, John Moore has not identified a single reasonable inference from the evidence that would meet its burden here.

Further, John Moore has not shown that the TCPA violates the right to trial by jury. It cites inapposite Texas cases that do not involve motions to dismiss and, in fact, predate the TCPA by four to ten decades. *See* Response Br. pp.54-55 (citing *Owens v. Ridgeway*, 395 S.W.2d 704, 706 (Tex. App.—Amarillo 1965, writ ref'd n.r.e.); *Choate v. San Antonio & A.P. Ry. Co.*, 44 S.W. 69, 69 (Tex. 1898); *Hammond v. Ashe*, 131 S.W. 539 (Tex. 1910)). Two of John Moore's cases concern completely unrelated circumstances (such as the propriety of an instructed verdict and a discussion of the role of appellate courts in reviewing facts) and another found there was no right to a jury trial on the relevant issues at all.[4] *See id.*

---

[4] John Moore also ignores that the right to a trial by jury is not absolute, but regulated by various laws and rules. *See, e.g., Black v. Jackson*, 82 S.W.3d 44, 55 (Tex. App.—Tyler 2002, no pet.) (affirming dismissal of plaintiff's claims for failure to satisfy a procedural requirement implemented to limit frivolous lawsuits).

7

Lacking any applicable Texas authority, John Moore cites equally inapplicable foreign authority. It cites a New Hampshire case, but as revealed by its own discussion of the case, New Hampshire's statute is different than the TCPA. *See* Response Br. p.55 (explaining that New Hampshire's procedure required plaintiff to show a probability of prevailing on its claims). The Louisiana case it cites follows a similar standard. *See Lee v. Pennington*, 830 So. 2d 1037, 1043 (La. Ct. App. 2002). Citing a California case, John Moore acknowledges that anti-SLAPP statutes that do not require the trial court to weigh the evidence, but require the non-movant to make a prima facie case that it will prevail, are constitutional. Response Br. p.56.

### 3. Third Attempted Relitigation: The Non-Existent Government Participation Requirement

John Moore also seeks to reargue its claim that the TCPA only applies to government participation. This Court squarely rejected that argument. *John Moore Servs.*, 441 S.W. at 353; *see Schimmel v. McGregor*, 438 S.W.3d 847, 858 (Tex. App.—Houston [1st Dist.] 2014, no pet. h.) ("None of [the] statutory definitions includes a requirement that the communications be made to a particular individual or entity, such as a governmental body, to constitute protected conduct.").[5] Additionally, the Fourteenth Court of Appeals has held that the

---

[5] The legislative history of the statute supports this Court's conclusion:

8

statute's reference to "participation in government" merely means "in the public interest." *Jardin v. Marklund*, 431 S.W.3d 765, 771-72 (Tex. App.—Houston [14th Dist.] 2014, no pet. h.). This Court has determined that the Houston BBB's review and letter grade concerning John Moore is a communication in the public interest. *John Moore Servs.*, 441 S.W.3d at 353-54.

## B. Res judicata and collateral estoppel require the dismissal of John Moore's claims.

The Houston BBB established by a preponderance of the evidence each essential element of its defenses of res judicata and collateral estoppel. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d). John Moore had the burden to overcome the defenses or face dismissal. *See id.; Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *8 (Tex. App.—Austin Apr. 11, 2014, pet filed) (mem. op.). It did not meet its burden. It does not even argue that the elements of res judicata and collateral estoppel are not fully satisfied here.

Instead, John Moore argues that res judicata and collateral estoppel should not be applied because the Houston BBB purportedly caused John Moore's claims

---

Whether petitioning the government, writing a traditional news article, or *commenting on the quality of a business*, involvement of citizens in the exchange of idea[s] benefits our society. Yet frivolous lawsuits aimed at silencing those involved in these activities are becoming more common, and are a threat to the growth of our democracy….

SENATE COMM. ON STATE AFFAIRS, BILL ANALYSIS, TEX. H.B. 2973, 82nd Leg., RS (2011) (emphasis added).

9

to be split by "improperly" seeking to enforce the statutory stay. Response Br. pp.36-37. As a fallback, John Moore contends that giving preclusive effect to the First Legal Action would be unfair. *Id.* pp.43-44. John Moore's arguments lack any support in the record or the law and should be rejected.

*First*, John Moore is solely responsible for waiting to file its amended petition in the First Legal Action until September 27, 2013–over *fifteen months* after it filed its original petition, *four months* after the parties exchanged written discovery and documents, and *ten weeks* after this Court's July 16, 2013 decision ruling against John Moore. CR137-64; RR19; *John Moore Servs.*, 441 S.W.3d 345. John Moore simply argues that its claims in this case are based on discovery obtained while the interlocutory appeal was pending in the First Legal Action. Response Br. p.44. Not only did John Moore have the discovery for four months before filing its amended petition, but its own pleadings belie its argument. The factual allegations in the amended petition varied little from the original, revealing that the alleged bases for the antitrust and other claims were already known.

*Second*, before John Moore filed its amended pleading, legislation amending the TCPA and Texas Civil Practice and Remedies Code §51.014(b) became effective and provided for an automatic stay of all trial court proceedings during the pendency of an interlocutory appeal of a denial of a motion to dismiss filed under the TCPA. *See* CR11; TEX. CIV. PRAC. & REM. CODE. ANN. §51.014(a)(12),

(b) (West 2013).  John Moore's contention that the automatic stay provision "did not apply *by its own terms*" is specious.  *See* Response at 37-39 (emphasis added).[6] Essentially, John Moore argues that the automatic stay provision in section 51.014(b) was never "triggered" because the Houston BBB's interlocutory appeal in the First Legal Action was not brought under section 51.014(a)(12) as required by section 51.014(b), but instead was brought under section 27.008 of the TCPA. Resp. p.39 ("To trigger the automatic stay, the interlocutory appeal must be brought under subsection 51.014(a)(12).").  A cursory reading of the statute, however, reveals the error in John Moore's contention.

Section 51.014(b) provides for a stay of all trial court proceedings when an interlocutory appeal is brought under, among others, section 51.014(a)(12).  TEX. CIV. PRAC. & REM. CODE ANN. §51.014(b).  Section 51.014(a)(12) expressly allows for an interlocutory appeal from an order of a district court that "denies a motion to dismiss filed under Section 27.003."  *Id.* at §51.014(a)(12).  There can be no dispute that the Houston BBB's interlocutory appeal in the First Legal Action was from the trial court's order denying the Houston BBB's motion to dismiss filed under Section 27.003 of the TCPA.  *Id.* at §27.003.

---

[6]    John Moore does not argue that the legislative amendment should not have been applied to then-pending cases like the First Legal Action, only that it was not "triggered."

11

Thus, the automatic stay provided in Section 51.014(b), as amended, was, in fact, "triggered" because the Houston BBB's interlocutory appeal was from the denial of its motion to dismiss filed under Section 27.003 as required by section 51.014(a)(12). Tellingly, John Moore cites no legal authority to the contrary.[7]

*Third,* none of the cases cited by John Moore support the notion that a defendant's proper exercise of its procedural rights in one lawsuit forecloses the application of res judicata or collateral estoppel in a subsequent lawsuit. For example, in *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381 (Tex. 1985), res judicata did not apply, not because a defendant advanced its procedural rights, but because the court severed a claim and a counterclaim. *Id.* at 383-84.

Likewise, John Moore was not "legally precluded from bringing the claims in a single lawsuit" like the plaintiff in *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 804 (Tex. 1994). Response Br. p.41. In *Sysco*, a federal procedural requirement prevented the plaintiff from bringing its state claims in federal court. *Id.* at 799. Thus, collateral estoppel did not apply because the jurisdictional issues were beyond the parties' control. *Id.* at 805 (declining to apply collateral estoppel

---

[7] John Moore makes passing references to the trial court's denial of the motion to consolidate the First Legal Action with this case—that John Moore admits it filed to avoid preclusion. Response Br. pp.36, 41-42. Yet, it offers nothing to show that the Houston BBB's opposition to the motion or the district court's denial of it was improper.

to a plaintiff "whose procedural predicament is not of their own making"). Here, contrarily, John Moore's predicament is entirely the result of its own apparent gamesmanship. There was no procedural or jurisdictional bar to filing its claims before the stay. John Moore chose to file its amended petition after it lost the appeal.

*Finally*, John Moore argues that it is unfair to give preclusive effect "to a prior judgment when there are 'differences in the quality or extensiveness of the procedures followed...'" Response Br. p.43 (citing *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 7 (Tex. 1986)). However, *Scurlock* concerned the preclusive effect of a judgment obtained pursuant to a Mary Carter agreement and is, thus, wholly inapposite. *Id.* at 7. Here, the posture and applicable standards in this lawsuit and the First Legal Action are the same. Both cases involve an appeal from a denial of a motion to dismiss under the TCPA. Although John Moore asserts that the claims in this lawsuit were "raised in an entirely different procedural posture" than in the First Legal Action because it obtained more discovery when the interlocutory appeal was pending, it fails to cite any authority for the proposition that additional discovery constitutes an "entirely different procedural posture." *Id.* pp.43-44. Moreover, since the facts alleged in this lawsuit are essentially the same as those alleged in the original petition in the First Legal Action, if any truly new facts came to light through discovery, John Moore did not plead them.

In short, John Moore has only itself to blame for waiting to file an amended pleading at a point when all trial court proceedings in the First Legal Action were stayed. Now that the First Legal Action has been reduced to a Final Judgment against John Moore, res judicata and collateral estoppel should prevent John Moore from relitigating those same claims.

**C.   John Moore has not met its burden to establish by clear and specific evidence a prima facie case for the essential elements of its claims.**

Even if the Houston BBB had not established its preclusion defenses, because the TCPA applies, the burden shifted to John Moore to establish by clear and specific evidence a prima facie case for each essential element of its claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. §27.005(c). John Moore wholly failed to meet its burden.

### 1.   Claims Abandoned or Waived

John Moore has abandoned or waived its claims for fraud, fraud in the inducement, unjust enrichment, detrimental reliance, and equitable remedies, and makes no effort to establish a prima facie case for their essential elements.

### 2.   Breach of Contract

John Moore has fallen woefully short of its burden to establish a prima facie case of each essential element of breach of contract by clear and specific evidence. For example, John Moore fails to identify any evidence that satisfies every element of an enforceable contract between the parties. In support of its allegation that it

14

was given an indefinite right to advertise its receipt of the Award of Excellence, John Moore cites one page from the minutes of a meeting of the Houston BBB's membership committee. Response Br. p.32 (citing CR1275). The citation actually undermines John Moore's claim because it reflects that "a recipient can advertise [receipt of the award] indefinitely *for as long as they maintain a satisfactory status with the BBB*." CR1275 (emphasis added).

John Moore also fails to mention, much less challenge, the legal flaws in its breach of contract theory previously recognized by this Court. *See John Moore Servs.*, 441 S.W.3d at 361.

### 3. DTPA

John Moore's effort to establish a prima facie case for the elements of a DTPA claim by clear and specific evidence also fails. Even if this Court had not already disapproved of John Moore's DTPA theory,[8] John Moore cannot even establish the first element—that it is a "consumer" who sought to acquire a good or service by purchase or lease. *See* TEX. BUS. & COM. CODE ANN. §17.45(4). In support of its contention that the Award of Excellence is a recognition that includes the trademark of the Houston BBB and is, therefore, a "good," John Moore offers no factual or legal authority. Response Br. p.34. And, in fact, the DTPA defines "goods" as "tangible chattels or real property purchased or leased for use." TEX.

---

[8] *John Moore Servs.,* 441 S.W.3d at 359.

15

BUS. & COM. CODE ANN. §17.45(1). Intangibles, like trademarks, are not "goods." *See Hand v. Dean Witter Reynolds, Inc.*, 889 S.W.2d 483, 497 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Thus, John Moore has not established the threshold element that it is a consumer under the DTPA.

### 4. <u>Conspiracy</u>

John Moore does not dispute that it abandoned its claim for conspiracy to monopolize. It points only to the elements of common law conspiracy, but oddly includes them in the antitrust section of its brief. Response Br. p.29. Nevertheless, John Moore offers nothing to establish a prima facie case for every essential element of civil conspiracy. *See* Appellants' Br. pp.49-50. John Moore only argues a preliminary point that the individual defendants acted on their own behalf rather than in their roles as officers and directors of the Houston BBB—yet fails to establish that with clear and specific evidence. *See* Response Br. pp.30-32.

### 5. <u>Antitrust</u>

John Moore did not establish a prima facie case for each of the elements of the antitrust theories it sponsored in the trial court in response to the motion to dismiss (*see* Appellants' Br. pp.34-48) and fails to do so in its Response Brief. John Moore has also impermissibly altered its antitrust theories on appeal, such as by arguing different relevant markets were restrained or the subject of

16

monopolization attempts[9] and claiming different products were tied.[10] *See Federal Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 604 (Tex. 2012) (appellate court may not consider arguments not presented to trial court); *Primrose Drilling Ventures Ltd. v. Nealwell Drilling Ltd.*, No. 14-98-00618-CV, 2000 WL 890622, at *8 (Tex. App.—Houston [14th Dist.] July 6, 2000, no pet.) (party is limited on appeal to theories presented below). Regardless, John Moore has not established every element of its revised antitrust arguments either.

### a. Elements Common to All Antitrust Claims

As an initial matter, John Moore failed to establish a prima facie case for at least two elements common to all of its antitrust claims—market power and injury to competition.

(i) **Market Power and Relevant Market:** John Moore's antitrust claims require evidence of market power. *See, e.g., Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993) (attempted monopolization); *Menasha Corp. v. News*

---

[9] *E.g., compare* CR151-56 (alleging markets including home repair and remodeling services, trade membership, and business ratings/consumer advocacy) *with* Response Br. pp.7-8, 17, 20, 27, 29 (arguing markets including home repair and renovation market in the Houston metropolitan area, marketplace of trust, consumer trust, membership in similar trade organizations, mediation of consumer complaints, and consumer dispute resolution in Houston).

[10] *E.g., compare* CR153-56 (alleging unbiased ratings as tying product and Houston BBB membership as tied product and also entry into residential services market as tying product and participation in ratings/consumer advocacy market as tied product) *with* Response Br. pp.7-10 (arguing consumer trust as tying product and membership/participation exclusively in Houston BBB programs as tied product).

17

*Am. Mkting. In-Store, Inc.*, 354 F.3d 661, 663 (7th Cir. 2004) ("every suit based on the Rule of Reason"); *RTLC AG Prods., Inc. v. Treatment Equip. Co.*, 195 S.W.3d 824, 831 (Tex. App.—Dallas 2006, no pet.) (tying). Market power may be demonstrated by direct or circumstantial evidence. *Rebel Oil Co. v. Atlantic Richfield Co.,* 51 F.3d 1421, 1434 (9th Cir. 1995). Here, John Moore offered no direct evidence of any defendant's alleged market power, like restricted output and supra-competitive prices. *See id.* Likewise, it did not offer circumstantial evidence of such market power through evidence of a defendant's dominant share of the relevant market and the existence of high barriers to entry.[11] *See id.*

John Moore has not even defined any plausible market, much less a proper relevant market, in which any defendant allegedly restrained trade or attempted to monopolize—a threshold step akin to identifying the pie before determining anyone's share of it. *See id.* ("Without a definition of the relevant market, it is impossible to determine market share."); *see also Spectrum Sports,* 506 U.S. at 456 ("[w]ithout a definition of [the relevant] market there is no way to measure [the defendant's] ability to lessen or destroy competition"). Nor has John Moore even alleged what share of the relevant market any defendant purportedly possesses. Casting about for a viable theory, John Moore references myriad potential relevant

---

[11]    While John Moore offers a number of arguments about market power in connection with its tying claim, its effort widely misses the mark. *See infra* pp.21-23.

18

markets, improperly naming different relevant markets on appeal than it did in the trial court. *See* CR151-59; CR1183-87. Yet, it fails to define or offer any evidence—lay testimony, documents, or expert testimony—establishing a single one of the relevant markets it bandies about. *See Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1369-70 (Fed. Cir. 2002) (affirming dismissal of antitrust claims for failure to establish prima facie case when plaintiff offered only conclusory allegations of relevant market and conclusory declarations, failed to proffer supporting evidence, and presented no expert testimony); *Water Craft Mgmt. L.L.C. v. Mercury Marine*, 361 F. Supp. 2d 518, 543 (M.D. La. 2004), *aff'd*, 457 F.3d 484 (5th Cir. 2006) (recognizing that the Eleventh and Fifth Circuits have held that defining relevant market requires expert testimony identifying the relevant product and geographic markets).[12]

(ii) **Harm to Competition:** John Moore failed to establish the requisite harm to the market. *See* Appellants' Brief pp.37-38. Its "evidence" focuses on Parsons's alleged vendetta against Valentine and the Houston BBB's alleged desire to drive John Moore out of business. But, John Moore offers no evidence that

---

[12]     The absurdity of John Moore's contention is underscored by the fact that John Moore concedes that relevant markets it references are "competitive" and, thus, the Houston BBB could not have market power in them. *See, e.g.,* CR142¶21 ("the household services market is … saturated and competitive in Houston and the surrounding areas"); CR152¶59 (listing Houston BBB competitors); CR1214¶92 (Valentine averring "[t]his puts the Houston BBB in competition with other trust services such as Angie's List, Yelp, and Consumer Business Review").

19

competition generally, rather than a single competitor, was harmed. *See RTLC,* 195 S.W.3d at 830 (recognizing antitrust laws protect competition, not competitors).

### b. Restraint of Trade

John Moore alleges that it pled *per se*, not rule of reason, claims. Response Br. pp.6-7. However, it offers no evidence or applicable authority to show that the *per se* analysis should apply. It cites a Florida Bar Journal article, but the article is not binding authority, does not say what John Moore claims it does, and is irrelevant because it relates to trade associations. *Id.* (citing Kimberly L. King, *An Antitrust Primer for Trade Ass'n Counsel*, 75 Fla. B. J. 26, 26 (2001)). John Moore also cites case law that is inapplicable, even contrary, to its position. *Id.* pp.14-15 (citing *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 497-99, 501, 507 (1988) (considering application of *Noerr-Pennington* immunity to a conspiracy to exclude plaintiff's product from the private standard-setting body's safety code and recognizing the application of the rule of reason to such cases)).[13] Regardless, John Moore has not established its claims under either standard.

---

[13] John Moore's position is, in fact, unsupported. *See RTLC*, 195 S.W.3d at 830 (recognizing that the Supreme Court has rejected the assumption that tying constitutes a *per se* violation); *Times Herald Printing Co. v. A.H. Belo Corp.*, 820 S.W.2d 206, 212 (Tex. App.—Houston [14th Dist.] 1991, no writ) (concerted action on non-price

(i)    **Tying**

John Moore has not established each essential element of the tying claims it pled. Appellants' Br. pp.44-46. Its effort to salvage its claim by altering its theories on appeal—even if permissible—would remain unavailing because it has not established a prima facie case for the elements of *any* tying theory.

On appeal, for example, John Moore claims that the tying product is the "market place of trust" or "consumer trust in the Houston BBB trademark" (Response Br. pp.7, 9-10) and the tied product is "membership or participation in the Houston BBB's programs to the exclusion of other, similar trade organizations or its own, in house consumer relations staff." *Id.* p.10. John Moore offers no authority or evidence for the notion that a concept, like trust, can be a tying product. Nor has it established that there are two separate products capable of being tied.

Additionally, John Moore fails to establish that the Houston BBB possesses sufficient market power over the tying product to restrain competition for the tied product. It simply pronounces that the Houston BBB "has power in the Houston

---

restrictions must be judged under the rule of reason); *see also Consolidated Metal Prods., Inc. v. Am. Petroleum Instit.*, 846 F.2d 284, 292 (5th Cir. 1988) (recognizing "touchstone" of *per se* illegality is that plaintiff's customers or suppliers "had, as a group, agreed or been forced" to stop doing business with plaintiff and holding that "a trade association that evaluates products and issues opinions, without constraining others to follow its recommendations, does not *per se* violate section 1 when, for whatever reason, it fails to evaluate a product favorably").

metropolitan area market for consumer trust," which is akin to claiming that ADT—the home security company—has market power over "peace of mind." *See id.* p.12. John Moore offers no authority for the notion that anyone can have market power over a concept and no evidence that the Houston BBB has market power over "consumer trust."

John Moore claims the Houston BBB has power "to coerce" participation in its programs, but does not offer clear and specific evidence that it or others were coerced to purchase any Houston BBB "product"—much less the tied "product"—only Valentine's conclusory statement that businesses that did not participate in the Houston BBB's dispute resolution system received low grades. Response Br. p.11 (citing CR1199); *see also RTLC*, 195 S.W.3d at 831 (requiring actual coercion for tying violation). It also offers only Valentine's unsupported and conclusory statement that the Houston BBB has "the power to create or destroy significant consumer trust in a business." Response Br. p.13; *see supra* p.3.

Finally, John Moore concedes that the tie must affect a substantial volume of commerce. Response Br. p.9; *see RTLC*, 195 S.W.2d at 830 (requiring anticompetitive effects in the tied market). John Moore has not identified any

evidence that the alleged tie had an adverse effect on the (undefined) relevant market for the tied product.[14]

### (ii) Boycott

In the trial court and in its Response Brief, John Moore failed to establish a prima facie case for each of the essential elements for any permutation of its boycott claim. *See* Appellants' Br. pp.38-43. It has not even shown the requisite existence of an agreement. *See Aquatherm Indus., Inc. v. Fla. Power & Light Co.,* 145 F.3d 1258, 1262 (11th Cir. 1998) (explaining an agreement between two or more persons is "fundamental"). Nor has it established that any alleged agreement unreasonably restrained trade in a defined relevant market. *See DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex. 1990) (requiring proof that agreement had adverse effect on competition in the relevant market); *see also Consolidated Metal*, 846 F.2d at 294-96 (comparing standard-setting organization's approval to *Consumer Reports* ratings and the Good Housekeeping seal of approval and determining that the importance of organization's certification was not enough to prove that denial of certification was a restraint of trade: "[e]ven

---

[14] John Moore's other arguments are unavailing as well. *See* Response Br. pp.12-13. John Moore cites no authority for the notion that the Houston BBB's annual revenues, alone, establish sufficient market power over "consumer trust." It also cites no authority for the proposition that one entity's market power can be established by another entity's loss of business particularly where, as here, John Moore's poor record of customer service is an equally probable cause. *See generally* CR1369-1800.

if user reliance gives API significant influence over the market, that influence may enhance, not reduce, competition").

John Moore claims it alleged a "horizontal non-price restraint" (Response Br. p.14), but it offers no argument or evidence that there was a conspiracy and that the alleged conspiracy was among direct competitors and, thus, horizontal. It cites elements based on its unfounded "horizontal" allegation, yet did not establish a prima facie case for them. *See id*. pp.16-17 (citing Section of Antitrust Law, Model Jury Instructions to Civil Antitrust Cases at B-57-59 (2005 ed.) for elements of *conspiracy* involving *direct competitors* in *trade association*).

For instance, John Moore asserts it must prove that the Houston BBB possesses market power or has unique access to a business element necessary for effective competition in the market for home repair and renovation services, so membership in the Houston BBB is necessary for John Moore to compete effectively in that market. *Id.* p.16. Again, John Moore provides no evidence of market power. Likewise, it offers nothing to establish that the Houston BBB has unique access to a business element that is necessary for effective competition. It merely discusses the alleged unfairness of the Houston BBB's rating and the importance—not necessity—of a positive rating and then concludes, without any evidentiary support, that without Houston BBB membership, John Moore cannot compete effectively. *Id.* pp.17-19. This is insufficient. *See Consolidated Metal*,

24

846 F.2d at 292 (determining that influential organization's certification was not "necessary" to plaintiff's ability to compete when plaintiff could sell product without certification).

John Moore's cited case, *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982), does not hold otherwise. That case considered whether a standard-setting professional society—considered an extra-governmental regulatory body because its codes were incorporated into federal and state regulations—should be liable for the acts of one member who manipulated the system to obtain an official letter disapproving a competitor's product. *Id.* at 559, 562, 570. John Moore claims the conduct here was identical, but it offers no evidence or explanation for how the Houston BBB's subjective rating based, in part, on hundreds of consumer complaints concerning John Moore is akin to a direct conspiracy involving an agent's abuse of a code-making process or why the Houston BBB should be treated like an "extra-governmental regulatory body" whose ratings have the force of law.

Additionally, John Moore acknowledges it must establish that the Houston BBB's denial or termination of John Moore's membership affected commerce. Yet, there is no evidence that John Moore's membership *was* denied or terminated. John Moore admits it resigned from the Houston BBB. Response Br. p.3. Regardless, John Moore has not established that its change in membership status

with the Houston BBB (or the Bryan BBB) had any effect on commerce. It simply theorizes that competition was harmed because it alleges that the Houston BBB directed consumers to John Moore's competitors. *Id.* pp.17-18, 29. It provides no citation to support this claim or that this conduct would constitute harm to commerce.

Finally, regarding its injury, John Moore decrees "there is no serious dispute that John Moore has been harmed." *Id.* p.20. To the contrary, this notion is hotly disputed. John Moore has not established through clear and specific evidence the existence of any harm, much less that it was caused by the Houston BBB. *Id.* The record is replete with other reasons for John Moore's alleged loss of business, including its inferior services, deceptive practices, and ill-trained workforce such as those reflected in the 300+ consumer complaints received by the Houston BBB (*see* CR001369-1800), including that:

- John Moore stated that fixing a water leak in a consumer's garage would require replacing all the piping inside her house at a cost of $4,300, while a second company solved the problem by replacing the drainage hose in her washing machine (CR1375);

- John Moore refused to continue to service an air-conditioning system it had installed but that had stopped working, leading the consumer to state "WE will never again user (sic) their service" (CR1443); and

- Consumer complained that she was taken advantage of because she is a "woman … 85 years old and confused" when John Moore charged her $839 to replace four fluorescent light bulbs and two ballasts in her kitchen). CR1467.

26

### c.    *Attempt to Monopolize*

John Moore's arguments in this Court "focus on attempted monopolization (and conspiracy) in the markets for consumer trust, membership in similar trade organizations, and mediation of consumer complaints (by the Houston BBB) and in the market for home repair and renovation services (by Church Enterprises)."[15] Response Br. p.21.   However, John Moore did not argue all of these theories before.  *See* CR157-58¶¶84-87; CR1187.  Once again, it is improperly altering its arguments on appeal in an effort to concoct a claim.   Regardless, it failed to establish a prima facie case for the elements of attempted monopolization for any market.[16]

(i) **Predatory or Anticompetitive Conduct:**  An act is only anticompetitive "when it harms both allocative efficiency *and* raises the prices of goods above competitive levels or diminishes their quality."   *Rebel Oil*, 51 F.3d at 1433 (emphasis orig.).   John Moore does not offer anything to establish that the two types of conduct it alleges constitute predatory or anticompetitive acts:

---

[15]    Despite John Moore's insinuation, no monopolization claim appears in its pleading. *See* CR150-62. Regardless, John Moore has not established a prima facie case for the elements of monopolization.   Appellants' Br. pp.46-47.   Thus, even if a monopolization claim had been pled, it has been abandoned.

[16]    John Moore admits all of the elements of attempted monopolization "must exist within a relevant market," yet it never defines that market. *See* Response Br. p.21.

(a)    John Moore claims that the Houston BBB gave it a bad rating and forced it to resign its membership.  Yet, it concedes that giving a business a bad review would not be anticompetitive if the rating was supported and promoted fair competition, such as "if it exposes an unethical business that seeks a competitive advantage by misleading its customers." Response Br. p.22.  Here, the record shows that several hundred former John Moore customers complained to the Houston BBB about John Moore's services and exposed a business that repeatedly misled consumers. *See supra* at p.26.

(b)    John Moore claims that the cancellation of an advertising cooperative made smaller businesses less competitive and hurt *the Houston BBB*'s ability to spread its message.  It offers no evidence of these effects or their impact on the market, merely Valentine's conclusory assumptions.  Response Br. pp.23-24.

(ii) **Dangerous Probability of Success:**  To determine if there is a danger of monopoly, courts must consider the relevant product and geographic markets and the defendant's power in them.  *See Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 592-93 (Tex. App.—Austin 2007, pet. denied) (affirming summary judgment for defendant when plaintiff failed to provide evidence of relevant market and defendant's share of market).  Here, John Moore has not provided clear and specific evidence of any relevant market or any

28

defendant's share of it (and, indeed, has not even *alleged* any defendant's market share).

John Moore merely claims Church Enterprises "holds a significant percentage of the business for home repair and renovation services," which is insufficient. Response Br. p.29; *see Olympia Co. v. Celotex Corp.*, 597 F. Supp. 285, 294 (E.D. La. 1984), *aff'd*, 771 F.2d 888 (5th Cir. 1985) (granting summary judgment, in part, due to plaintiff's conclusory and imprecise allegation of defendant's market share and failure to support relevant market with evidence). Further, the only citation for this alleged "significant" market share is Valentine's affidavit which simply makes the same pronouncement without supporting data. *See* Response Br. p.29 (citing CR1212).[17]

Finally, without evidence or market analysis supported by data, John Moore also claims that the Houston BBB's only competitors are other BBBs yet John Moore's theory is undermined by its own recognition that the Houston BBB has competitors like Angie's List and Yelp. Response Br. p.27; CR1214¶92.

---

[17] The same page of Valentine's affidavit directly refutes John Moore's theory that Church Enterprises had a dangerous probability of achieving a monopoly by averring that the market for home services is "highly competitive" and "hyper-competitive." CR1212¶¶84-85.

**II.    The Trial Court Erred in Overruling the Houston BBB's Objections to John Moore's Evidence, but Did Not Err in Sustaining Objections.**

John Moore incorrectly contends that the trial court "had no authority" to rule on the Houston BBB's evidentiary objections, citing *Direct Commercial Funding, Inc. v. Beacon Hill Estates, LLC*, 407 S.W.3d 398 (Tex. App.—Houston [14th Dist.] 2013, no pet.) and section 51.014(b).  *See* Response Br. pp.59-60.  Neither supports John Moore's position.  In *Direct*, the Fourteenth Court of Appeals ruled that the trial court erred in granting a motion to dismiss under the TCPA after the motion was denied by operation of law.  *Direct*, 407 S.W.3d at 401.  It did not rule that the trial court was precluded from making any ancillary ruling relating to its decision on the motion to dismiss.  *Id.*  Similarly, John Moore's reliance on the automatic stay provision of section 51.014(b) is misplaced because the Houston BBB filed its Notice of Appeal after the trial court issued its evidentiary rulings.  CR1112-14; 2Supp.CR3.

John Moore's cross-appeal of certain evidentiary rulings is also meritless.  *See* Response Br. pp.60-61.  John Moore offers only conclusory arguments in support of its contention that certain statements in Valentine's affidavit were admissible, but fails to cite to a single sentence in Valentine's affidavit that would establish the purported admissibility of these statements.  *Id.*  John Moore also incorrectly cites *Anderson Prod. Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 425 (Tex. 1996) in support of its argument that Valentine gained personal knowledge by

reviewing documents produced in discovery. That case, however, is inapposite because it concerns expert testimony, not lay testimony like Valentine's. Although John Moore later claims, alternatively, that Valentine is an expert, it provides no support for that argument.

Similarly, John Moore's contention that the trial court erred in excluding two documents is meritless. Response Br. p.61 (CR1318-22). Both documents constitute hearsay and contain hearsay within hearsay. Both are also irrelevant because neither supports the interpretations that John Moore fancifully ascribes to them. *Id.* Further, John Moore fails to explain how it was harmed by any of these evidentiary rulings, or that they resulted in an improper judgment. *See* TEX. R. APP. P. 44.1(a); TEX. R. EVID. 103(a); *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992).

Finally, John Moore offers no analysis—only unsupported conclusory statements—in responding to the Houston BBB's identification of errors in the trial court's evidentiary rulings. Response Br. pp.61-62. Moreover, with regard to CR2116-2130/HOUBBB12448-462, John Moore misstates the record, contending it complied with TEX. R. CIV. P. 193.7. *Id*. But, it did not properly authenticate the document and, as a result, it is inadmissible. CR868-72.

## **CONCLUSION AND PRAYER**

For all these reasons, the Houston BBB respectfully requests that the order denying its motion to dismiss be reversed, that this Court render judgment in its favor and remand this case to the trial court for determination of the Houston BBB's reasonable attorneys' fees, court costs, and other expenses, as well as an award of sanctions pursuant to section 27.009(a)(2), and for such other and further relief to which it may show itself to be justly entitled.

Respectfully submitted,

**PORTER HEDGES LLP**

By:   /s/ Lauren Beck Harris
      Lauren B. Harris
      Texas Bar No. 02009470
      Lharris@porterhedges.com
      Susan K. Hellinger
      Texas Bar No. 00787855
      Jeffrey R. Elkin
      Texas Bar No. 06522180
      M. Harris Stamey
      Texas Bar No. 24060650
      1000 Main Street, 36th Floor
      Houston, Texas 77002
      Telephone: (713) 226-6624
      Facsimile: (713) 226-6224

***Attorneys for Appellants The Better Business Bureau of Metropolitan Houston, Inc., The Better Business Bureau of Metropolitan Houston Education Foundation, Dan Parsons, Chris Church, Church Enterprises, Inc., Gary Milleson, Ronald N. McMillan, D'Artagnan Bebel, Mark Goldie, Charlie Hollis, and Steven Lufburrow***

33

**CERTIFICATE OF SERVICE**

Pursuant to Rules 6.3 and 9.5(b), (d), and (e) of the Texas Rules of Appellate Procedure, this is to certify that on this 2nd day of January 2015, a true and correct copy of the foregoing was served on the following counsel of record by electronic delivery as follows:

Lori Hood
Douglas Pritchett
Tamara Madden
Johnson Trent West & Taylor LLP
919 Milam Street, Suite 1700
Houston, Texas 77002
lhood@johnsontrent.com

*Attorneys for Appellee John Moore Services, Inc. and John Moore Renovation, LLC*

/s/ Lauren B. Harris
Lauren B. Harris

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4(i)(2)(C) because this brief contains 7482 words, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(i)(1).

This brief complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) and the type style requirements of Texas Rule of Appellate Procedure 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font or larger.

/s/ Lauren B. Harris
Lauren B. Harris